*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JERMAINE JEVALE JOHNSON,

Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 343442
St. Clair Circuit Court
LC No. 17-003111-FH

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant was convicted by a jury of one count of possession with the intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, felon-in-possession of a firearm, MCL 750.224f, and felon-in-possession of ammunition, MCL 750.224f, as well as two counts of carrying a concealed weapon, MCL 750.227, and four counts of receiving and concealing a stolen firearm, MCL 750.535b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve concurrent prison terms of 14 to 30 years for the delivery conviction, 8 to 30 years for the concealed weapon and the felon-in-possession convictions, and 11 to 30 years for the receiving and concealing convictions, all to be served consecutively to a two-year term for the felony-firearm conviction. These sentences were also consecutive to defendant's parole violation. MCL 768.7a(2). Defendant appeals as of right, arguing that his trial counsel was ineffective for failing to investigate or present favorable evidence, that the trial court erred by allowing drug profile evidence, and that the evidence was insufficient to convict him of possession with the intent to deliver methamphetamine. We affirm defendant's conviction, but remand for the ministerial task of correcting defendant's judgment of sentence to reflect that his carrying a concealed weapon sentences are concurrent to his felony-firearm sentence.[1] *People v*

---

[1] The prosecution charged defendant with felony-firearm based on the other felonies, not carrying a concealed weapon.

*Cortez*, 206 Mich App 204, 207; 520 NW2d 693 (1994), citing MCL 750.227b(1) (felony-firearm sentence cannot run consecutively to sentence for carrying concealed weapon).

## I. BACKGROUND

Defendant was arrested after he was followed by members of a drug task force over the course of several hours on October 12, 2017. The officers eventually detained defendant and searched in and around his vehicle and person. During those searches, they discovered various items, including methamphetamine, cocaine, potential LSD, jars of marijuana, a digital scale, drug paraphernalia, mail addressed to defendant, $810 in cash, jewelry, and ammunition. Defendant was carrying a stolen, loaded firearm and possessed a bag where another loaded firearm was discovered. Two additional stolen, loaded firearms were found in a Sentry fire safe opened with a key inside defendant's vehicle. That safe also contained a store receipt reflecting defendant's purchase of the safe a week earlier. Two additional loaded firearms were separately located in defendant's vehicle. One was in an unlocked gun case. The other was inside a locked container opened with a key from inside defendant's vehicle and also contained a prescription bottle bearing defendant's name. A gun cleaning kit was also inside defendant's vehicle. A photograph extracted from defendant's cell phone depicted four guns and the accompanying text suggested that two were for sale and that he always had possession of a separate gun. Defendant's vehicle also had a surveillance camera and the police found a receipt in the safe showing that defendant had purchased the surveillance system six days earlier. An officer searched an unlocked black and silver box outside of defendant's vehicle, discovering jars of marijuana, lighters, a digital scale, a pouch with approximately 10 grams of what appeared to be crystal methamphetamine, and a bottle with approximately 1 gram of crystal methamphetamine. A forensic scientist later confirmed that these substances equaled approximately 9.2 grams of methamphetamine.

During jury selection, defense counsel noted that he did not anticipate calling any witnesses. And, in opening statement, counsel noted that, depending on the future trial testimony, defendant may have committed an offense or two. But counsel also suggested that defendant had no knowledge of the drugs or guns, noting recent repair work performed on defendant's vehicle as well as defendant's current contention that he was returning the gun found in his pocket to someone[2] who had called him and told him it was in his car. After the prosecution witnesses testified, defendant waived his right to testify. In closing, counsel conceded defendant's guilt as to the carrying a concealed weapon, felon-in-possession, and felony-firearm charges.[3] Defense counsel disputed defendant's possession of the drugs and his

---

[2] Defendant now identifies that person as someone he knew as Carlos, but the record reflects that he initially identified a man named "Percy." The preliminary examination transcript reflects that defendant made incriminating statements during two police interviews after his arrest; however, for reasons not reflected in the record before this Court, those statements were not admitted during his trial.

[3] This Court has recognized that admitting guilt of lesser offenses while contesting guilt of more serious offenses can constitute sound trial strategy. *People v Matuszak*, 263 Mich App 42, 60;

intent to deliver them. Defense counsel further disputed defendant's knowledge that the firearms were stolen.

Following a three-day trial, the jury returned a guilty verdict on all ten counts.

## II. ANALYSIS

On appeal, defendant argues: (1) he was denied effective assistance of counsel; (2) the prosecution's case relied on drug profile evidence that was not properly limited; and (3) the evidence presented at trial was insufficient to establish that he possessed any amount of methamphetamine. After examining each of his assertions in turn, we find no error.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective when he: (1) failed to investigate and/or present potential witnesses that would have established that other individuals had access to his vehicle shortly before his arrest and arguably provided an alternative explanation for the guns found therein, (2) advised defendant not to testify in his own defense to establish that he was unaware of the presence of guns in his vehicle, and (3) failed to note to the jury that the evidence placed the narcotics in the area around defendant's vehicle, not actually inside of his vehicle.

Defendant did not raise these issues before the trial court. However, he filed a motion for remand, which this Court denied without prejudice. *People v Johnson*, unpublished order of the Court of Appeals, entered on February 1, 2019 (Docket No. 343442). Defendant now renews his request for an evidentiary hearing, which we deny.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo. *People v Unger* (*On Remand*), 278 Mich App 210, 242; 749 NW2d 272 (2008).

The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks

---

687 NW2d 342 (2004); *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994).

-3-

omitted). The first prong requires the defendant to show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment because his performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). The second prong requires the defendant to show that counsel's deficient performance prejudiced the defense. *Id*. To do so, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. This requires a showing that counsel's errors were so serious that they deprived defendant of a fair trial with a reliable result. *Id*.

## 1. FAILURE TO INVESTIGATE

Defendant asserts that he informed his trial counsel of witnesses who would have been able to corroborate the following facts: (1) two other men—one who had serviced his vehicle and another who had borrowed it shortly before it was searched—had access to it; (2) although defendant knew about the gun in his pocket, he was attempting to return it to a man whom he knew as Carlos; (3) defendant earned the $800 found in his possession, having been paid cash for several jobs; (4) outside of the gun in his pocket, defendant did not have any knowledge of the drugs or guns in his vehicle. Defendant alleges that counsel failed to contact the witnesses whose names he had provided and strongly advised him not to testify. Defendant further argues that, as counsel failed to present their testimony, the jury was given no alternative explanation for the contraband in his vehicle.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id*. "While a defendant may have the constitutional right to the effective assistance of counsel, this does not encompass the right to assistance of counsel in committing perjury." *People v Toma*, 462 Mich 281, 303 n 16; 613 NW2d 694 (2000).

Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *People v Hubbard*, 156 Mich App 712, 714; 402 NW2d 79 (1986). In order to overcome the presumption of sound trial strategy, the defendant must show that the failure to prepare for trial or interview witnesses resulted in counsel's ignorance of valuable evidence that would have substantially benefited the accused. *People v Bass*, 223 Mich App 241, 252-253; 581 NW2d 1 (1997), vacated in part on other grounds 457 Mich 866 (1998). "Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (footnotes and citation omitted). A substantial defense is defined as "one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks omitted).

-4-

This Court is reluctant to second-guess trial counsel's chosen defense. *People v Strong*, 143 Mich App 442, 449; 372 NW2d 335 (1985). And the fact that counsel's strategy ultimately failed does not establish that counsel was ineffective. *Id*.

Again, the record here reflects defense counsel's awareness of the repair work performed on defendant's vehicle as well as defendant's claim that he was returning the gun in his pocket to someone[4] who had called him and told him about the gun. As appellate counsel candidly recognizes, that defendant, a convicted felon, was allegedly returning the gun to another provides no defense to the charge of carrying a concealed weapon. *People v Hernandez-Garcia*, 477 Mich 1039, 1040; 728 NW2d 406 (2007) ("momentary innocent possession of a concealed weapon is not a defense to a charge of unlawfully carrying a concealed weapon"). The same is true as to the charges of being a felon-in-possession and felony-firearm. *Grays v Lafler*, 618 F Supp 2d 736, 743 (WD Mich, 2008) (recognizing that under Michigan law, momentary innocent possession is not a defense to felon in possession or felony-firearm).

Again, at trial, defense counsel indicated that he was not anticipating calling any witnesses and rested after defendant opted not to testify. Defendant does not specifically identify the names of the witnesses he provided to counsel or the substance of their testimony. There is no indication that the men purportedly involved with defendant's vehicle before the search would have been willing to testify on defendant's behalf or that they would have testified favorably. Indeed, in order for their testimony to have benefited defendant, the men would have had to testify that they were involved with drugs and stolen firearms. It is not reasonable to conclude that these potential witnesses would have incriminated themselves in order to benefit defendant. *Dixon*, 263 Mich App at 398. On the other hand, it is also possible that they may have denied any role in such crimes, further implicating defendant as the responsible party.

Moreover, defendant's proffer regarding the mechanic contradicts Officer Jeremy Young's testimony that he had surveilled defendant for hours before stopping him in his vehicle. Young did not see anyone else in defendant's vehicle. One of the six firearms found was in defendant's pocket, and an officer observed defendant holding a bag that contained another firearm. A revolver found in defendant's vehicle was located in a locked box opened with a key inside defendant's vehicle that also contained a prescription bottle bearing defendant's name. Two other firearms, which had been reported as stolen, were found in a locked safe in defendant's vehicle that also contained two receipts bearing defendant's name and was opened with a key from inside defendant's vehicle. A car title application in defendant's name and mail addressed to defendant were also in his car. Only one firearm found in the vehicle did not have additional evidence beyond being located in defendant's vehicle that linked it to defendant. Additionally, a detective testified that an image of four guns and a message of "this is what I have" had been texted from defendant's phone less than a month before his arrest. Thus, defendant cannot demonstrate that trial counsel's failure to pursue these witnesses deprived him

---

[4] See footnote 2.

of a substantial defense when the trial evidence contradicted his claims that other people placed the contraband in his vehicle.[5] *Id.*

Similarly, defendant does not identify or provide affidavits from any of the employers he claimed paid him in cash for his services. Notably, the $810 was separated from the money in defendant's wallet and in smaller denominations. In any event, we continue to presume that trial counsel's decision not to present these witnesses was part of his trial strategy. *Id.* ("[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." (quotation marks omitted)). Regardless of whether the cash came from legitimate sources, defendant, a convicted felon, had possession of two loaded firearms and his car contained drugs, drug paraphernalia, scales, and delivery materials.

Moreover, defendant's claim that counsel performed deficiently also fails because he cannot demonstrate prejudice. As just discussed, the evidence against defendant was mountainous and compelling. The police discovered six firearms, three of them in two locked containers opened by a key in defendant's car, as well as several types of drugs in or near defendant's car. Defendant, a convicted felon, had a stolen, loaded weapon in his pocket. Incriminating texts and photographs were found on defendant's cell phone. Numerous pieces of jewelry were in defendant's car in addition to the over $800 found. In light of the facts in this case, defendant has failed to show that counsel's performance was deficient and that he was prejudiced.

## 2. ADVICE NOT TO TESTIFY

Defendant next argues that his trial counsel errantly urged him to not testify as there was no strategic reason not to present any defense because it allowed the prosecution's case to go unchallenged.

The record belies defendant's contentions. Here, at trial, defendant personally informed the trial court that he did not wish to testify and that he had spoken with his trial counsel regarding the benefits and drawbacks of the decision. Specifically, defendant confirmed at trial that he made the choice not to testify and that he was affirmatively waiving his right to testify. Thus, counsel could not be ineffective for failing to call defendant to testify when defendant made the affirmative choice not to testify. See *People v Plummer*, 229 Mich App 293, 308; 581 NW2d 753 (1998) (finding that a defendant could not demonstrate that his trial counsel provided deficient performance where the defendant had informed the trial court that he was informed of his rights to testify and was satisfied with the performance of his trial counsel in that regard).

Moreover, defendant has not demonstrated that his counsel's failure to call him to testify was an unsound matter of trial strategy. See *People v Alderete*, 132 Mich App 351, 360; 347

---

[5] The record below also reflects that defendant initially told the police that he was aware of the guns and drugs, but the guns were not his and he was going to trade them for other guns. See footnote 2.

NW2d 229 (1984) ("The decision to call or not call the defendant to testify is a matter of trial strategy."). Here, even though defendant claims that he could have informed the jury that he had no knowledge of the firearms in his vehicle, at the time of the decision whether to testify it was not known whether defendant's testimony, particularly on cross-examination, would have hurt or helped defendant's chances at acquittal. It remains unknown whether defendant's testimony would have assisted him or would have assisted the prosecution, and defendant does not explain how the advice of his trial counsel was erroneous. There is no evidence that defendant's trial counsel failed to properly inform defendant of the repercussions regarding his decision of whether to testify, or that his advice was not sound at the time defendant made his decision. Thus, defendant has not satisfied his burden of demonstrating that any advice by his trial counsel to not testify was unsound trial strategy.

### 3. ARGUMENTS TO JURY ABOUT METHAMPHETAMINE

Finally, defendant argues that his trial counsel was ineffective for failing to note to the jury that the methamphetamine that he allegedly possessed with intent to deliver was never connected with his person or vehicle. The record belies defendant's contention as trial counsel made the very argument defendant asserts during his closing argument:

> We have evidence of a very chaotic situation. Something's on the ground. Where did it come from? Did it come from the car? I don't know. Did my client put it on the ground? There's -- evidence is not that. Did the police take it out of the car? They don't know. If the police took it out of the car where did they take it from? They don't know. So, other than not knowing where it came from we start saying, okay, what do you have to tie this guy to it. He's there in his car. Do you have any fingerprints at all? No. Any fingerprints inside? No. [The prosecution is] going to say we don't have to give you fingerprints and I agree. And they don't have to do these things. There's no requirement that they do fingerprints. There's no requirement that they do anything, but the question becomes as to the . . . your satisfaction of have -- am I satisfied as I sit here today. As I sit here today -- what is it five months later and in five months nobody has gone ahead and checked the owner's manual to say, hey, maybe we should check this stuff out.

> *   *   *

> So then we go to the next step is what evidence is there that he knowingly possessed methamphetamine. There isn't any. Now we get to the sale aspect. Well, they're going to -- there, there -- the claim here is that he must have intended to deliver it because, first of all, there's some pictures back in August of some bravado with a bunch of money. I'm not going to get into whether he was at the casino or -- and, and I don't know how much money there is. We don't know. It looks like maybe a thousand bucks. Maybe more. And so we don't know what that is. It could be a photo off the Internet. I don't know, but I don't think it has anything to do with or lends any credence to anything that happened on October 12th. They're saying well we think he did something bad in August so, therefore, he had to have done something bad in October. Well, I don't want

-7-

to say show me the money but, all right, fine. Show me. What did he do in October? Tell me about it. And the answer is nothing. He got stopped. He, he was already stopped. He was approached. And he had some guns and for that he acknowledges that. He didn't know they were stolen. There's no evidence that he intended to deliver anything. We don't have text messages anywhere. We don't have any of that stuff. And, members of the jury, there simply is not enough here to convince you beyond a reasonable doubt that he is guilty of Count 1 which is possession -- well, intent to deliver methamphetamine.

* * *

I don't think there's any evidence. There is what the law calls a lesser offense and that's simply possessing it. I don't think there's any evidence of that either for the reasons I've already stated because the law requires that even if, even if that box came from his car and even if that was somewhere in his car that was vis[ible] -- that he knew where it was, we don't know where it was. That you still have to show that he knew what was inside the box. That he possessed something with intent. I hand you a box and say, here, can you hold this for me[?] Okay. What's in it? I have no idea. I have no idea. There's no evidence of that in this case. The Prosecution had their opportunity to put it in. There's no evidence of it.

This demonstrates that trial counsel did note to the jury several times throughout closing argument that there was uncertainty about where the methamphetamine came from and there was no direct connection to defendant. Accordingly, defendant's contention is unsupported by the record and defendant has failed to demonstrate that his counsel was ineffective.

## B. DRUG PROFILE EVIDENCE

Defendant also argues that he was denied a fair trial because the prosecutor impermissibly used expert testimony about drug profile evidence as substantive evidence of his guilt. We disagree.

By way of background, St. Clair County Sheriff's Department Deputy Nicholas Singleton was qualified as an expert in drug trafficking. He explained the differences between out of county sourced methamphetamine and locally sourced methamphetamine. Deputy Singleton testified that the current price for one gram of methamphetamine was $140 to $180.

Deputy Andrew Young was also qualified as an expert in drug trafficking in St. Clair County. He testified that crystal methamphetamine sold for about $40 for a little less than half of a gram, but had been $110 for a gram two months earlier, and was increasing to $140 or $150 a gram before trial. Young explained that the price fluctuated because a large dealer had been eliminated and the price was based on the number of manufacturers. Deputy Young also testified that a methamphetamine user typically possessed a small quantity of the drug in a "user-end baggie" (a detached corner of a sandwich bag), something to contain the drug for smoking, like a glass pipe or foil "boat" with a straw, and a butane torch to produce sufficient heat. Conversely, Deputy Young testified that a methamphetamine trafficker would have "dealer-end

baggies" (sandwich bags that were missing corners), an amount over one or two grams in one bag, and scales. Deputy Young explained that heroin and cocaine were prepackaged drugs, whereas a methamphetamine dealer would make individual packages for customers. Deputy Young opined that it was not uncommon for a trafficker to also be a user of drugs.

Further, when asked why he collected a digital scale from defendant's vehicle as evidence, City of Port Huron Police Department Officer Jeremy Young, who was not qualified as an expert, responded: "We collect it because it shows that it's common for people dealing narcotics to weigh their product before dealing it." He then explained the characteristics of the type of sandwich bags that were typically found with drug users and the type that were found with drug traffickers based on his experience. Finally, Officer Young indicated he could not say whether the bags found in defendant's vehicle had the characteristics consistent with drug use or trafficking.

## 1. STANDARD OF REVIEW

We review the admission of drug profile evidence for an abuse of discretion. *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Moreover, an evidentiary error does not merit reversal in a criminal case unless, after review of the case, it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Here, defendant objected at trial to the "drug profile evidence" offered by Deputies Young and Singleton, which the trial court admitted with a limiting instruction to the jury. Defendant also objected to Officer Young's testimony regarding the sandwich bags as impermissible "drug profile evidence."

But defendant failed to object to Officer Young's testimony regarding the digital scales on the ground that it was impermissible drug-profile evidence and failed to object to the absence of Officer Young from the court's limiting instruction. We review nonconstitutional claims of unpreserved errors for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. After these three criteria have been met, we will only reverse when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and alterations omitted).

## 2. THE USE OF DRUG PROFILE EVIDENCE

"Drug profile" evidence consists of "a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in" drug trafficking. *People v Hubbard*, 209 Mich App 234, 239; 530 NW2d 130 (1995) (quotation marks omitted). This evidence is "essentially a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as the use of pagers, the carrying of large amounts of cash, and the possession of" items used to package drugs for sale. *Murray*, 234 Mich App at 52-53.

While courts generally have allowed expert testimony explaining the significance of seized contraband or other items of personal property, "the use of drug profiles as substantive evidence of a defendant's guilt" is improper. *Hubbard*, 209 Mich App at 239-240 (citations omitted). Drug profile evidence "may not necessarily be connected to or inherently part of the drug trade, so that these characteristics could apply equally to innocent individuals as well as to drug dealers." *Murray*, 234 Mich App at 53. Drug profile evidence is potentially prejudicial because it is evidence of a law enforcement investigative technique that should not be confused with evidence against the defendant, and a jury may give an officer's testimony disproportionate weight. *Hubbard*, 209 Mich App at 240-241.

Expert drug profile evidence has been generally allowed "to explain the significance of items seized" during a drug investigation and "to aid the jury in understanding evidence in controlled substance cases." *Murray*, 234 Mich App at 53 (citations omitted). However, the expert must not "move beyond an explanation of the typical characteristics of drug dealing" and give an opinion "that the defendant is guilty merely because he fits the drug profile" because this testimony would be "inherently prejudicial." *Id*. at 54 (citations omitted). On a case-by-case basis, trial courts must carefully "enable profile testimony that aids the jury in intelligently understanding the evidentiary backdrop of the case, and the modus operandi of drug dealers, but stop short of enabling profile testimony that purports to comment directly or substantively on a defendant's guilt." *Id*. at 56.

In *Murray*, 234 Mich App at 56-57, we listed four factors to apply when considering whether drug profile evidence should be admitted. Here, the trial court recited the factors and found that the proposed testimony was proper, but cautioned itself and the attorneys to ensure the testimony stayed within the parameters of the factors.

Regarding the first factor, the drug profile evidence must be offered "to assist the jury as background or modus operandi" evidence, not as substantive evidence of guilt, and the attorneys and court must carefully maintain the distinction. *Murray*, 234 Mich App at 56. Here, Deputies Singleton and Young were qualified experts in drug trafficking in St. Clair County and were able to assist the jury in understanding drug trafficking in the county. Their testimony was provided to aid the jury in understanding the general local background of methamphetamine manufacturing and sales, its value, and items that are typically used in drug trafficking. Defendant does not argue that this testimony was improper, and there is no argument that it blended drug profile evidence and substantive evidence of guilt. Likewise, Officer Jeremy Young's testimony about the digital scale and baggies was also offered to demonstrate that it was typical for these items to be used in drug trafficking. However, he did not maintain a distinction between the profile evidence and evidence of defendant's guilt because he applied his comments to the items found in defendant's vehicle.

Defendant argues that the prosecutor improperly used the drug profile evidence in closing argument by relying on it to demonstrate defendant's guilt. The prosecutor commented on the evidence and on the drug profile testimony. However, the prosecutor made clear in his remarks that "[n]ow you have the opportunity to put that background information into proper context when you're looking at facts and circumstances of this case." He referenced the drug profile evidence separately from the substantive evidence. The prosecutor did argue that defendant was guilty by describing the substantive evidence in the context of the drug background evidence.

However, a prosecutor's arguments are not evidence and prosecutors are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236 (citation omitted).

Regarding the second factor, evidence beyond the drug profile evidence must be admitted to prove a defendant's guilt, because drug profile evidence "should not normally enable a jury to infer the defendant's guilt." *Murray*, 234 Mich App at 57. Here, the drug profile evidence provided the background for the contraband at issue, including defendant's possession of a substantial amount of methamphetamine in an area he was observed to be alone, his possession of a substantial amount of money, and items found that were used to traffic narcotics like scales and baggies. Thus, this drug profile evidence provided context for the other record evidence that demonstrated defendant's guilt and did not itself establish his guilt. Accordingly, defendant's convictions did not rely on drug profile evidence.

The third factor requires the trial court to instruct the jury "that drug-profile evidence is properly used only as background or modus operandi evidence and should not be used as substantive evidence of guilt." *People v Williams*, 240 Mich App 316, 320-321; 614 NW2d 647 (2000) (citation omitted). Defendant acknowledges that the trial court gave a limiting instruction, but asserts that it was inadequate in light of the evidence presented. Here, the trial court instructed the jury as follows:

> You've heard testimony from Deputies Nicholas Singleton and Andrew Young about their training and experience concerning other drug cases. This testimony is not to be used to determine whether the defendant committed the crimes charged in this case. This testimony may be considered by you only for the purposes of understanding the local trends in use in trafficking of methamphetamine.

The trial court properly instructed the jury to consider the evidence only for an understanding of local methamphetamine trends and not for evidence of defendant's guilt. Moreover, defendant twice failed to object to the limiting instruction, once after the prosecution read it and again after the trial court gave it, despite the trial court soliciting his objection. Defendant also requested that the trial court give the limiting instruction immediately after defendant objected to Deputy Singleton's testimony. Accordingly, defendant invited any error in the jury's limiting instruction as to Deputies Singleton and Young. *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003) ("[A] party cannot seek appellate review of an instruction that he himself requested . . . [a]ppellate review is precluded because when a party invites the error, he waives his right to seek appellate review, and any error is extinguished."). However, the trial court did not include Officer Young in its limiting instruction.

Under the fourth factor, "the expert witness should not express his opinion, based on a profile, that the defendant is guilty, nor should he expressly compare the defendant's characteristics to the profile in such a way that guilt is necessarily implied." *Murray*, 234 Mich App at 57. Here, Deputies Singleton and Young did not compare their provided drug profile evidence with the evidence found on defendant and in his vehicle, and neither testified about defendant's guilt. However, Officer Jeremy Young's testimony—that he collected the digital scale from defendant's possessions because "it shows that it's common for people dealing

narcotics to weigh their product before dealing it"—implied defendant's guilt. He also expressed an opinion about the sandwich bags located in defendant's vehicle, but did not imply guilt because he did not state that the bags had the characteristics of drug users or traffickers.

Viewing the drug profile evidence as a whole in consideration of the four *Murray* factors, we conclude that only Officer Jeremy Young's lone comment regarding the scale found in defendant's possession was problematic. Officer Young offered an opinion that implied that defendant was guilty of trafficking drugs because he possessed a scale, which is commonly used to sell drugs. However, the admission of this evidence without objection was not outcome-determinative and not plainly erroneous. *Carines*, 460 Mich at 763-764. The jury had already heard from Deputies Singleton and Young that scales were used in drug trafficking and the jury had already been instructed that this was not evidence of defendant's guilt. It is true the scale suggested that defendant trafficked methamphetamine. But given the substantial amount of methamphetamine found in defendant's exclusive control, which was more compelling evidence of his guilt, it is not likely that excluding the reference to the scale would have made a difference in the jury's determination. See *Lukity*, 460 Mich at 495-496. Thus, defendant has not demonstrated that this error affected his substantial rights.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was no evidence that he possessed methamphetamine because the police found the drug in a container that was not seen in his vehicle or on his body. Defendant also argues that there was no legally admissible evidence that he possessed the methamphetamine with the intent to deliver. We disagree.

Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366-367; 285 NW2d 284 (1979). To determine if the prosecutor produced evidence sufficient to support a conviction, we consider "the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks omitted). We consider direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, to determine whether the evidence was sufficient to sustain the defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). In reviewing the sufficiency of the evidence, we are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003) (quotation marks and citation omitted).

Here, defendant was convicted of possession of methamphetamine with intent to deliver, MCL 333.7401(2)(b)(*i*). In order to convict defendant of this crime, the prosecutor had to prove that defendant knowingly possessed methamphetamine and that defendant intended to deliver it to someone else. *People v Robar*, 321 Mich App 106, 115-117; 910 NW2d 328 (2017).

As already discussed, Officer Jeremy Young had observed defendant for hours and did not observe any other people in defendant's vehicle. He viewed defendant for about 10 minutes while defendant was stopped in his vehicle, and witnessed defendant leave the vehicle to manipulate items in the back of the vehicle. He also saw defendant return to his open driver's

door and lean into the vehicle to do something when officers converged on him. Once Deputy Singleton handcuffed and patted down defendant's body, he observed a box located next to the items that he removed from defendant, but he did not place it there and did not find it on defendant's body. Officer Young did not know how the case got next to the car, but he photographed and searched the black and silver box; it contained, among other things, a bag of 9.2 grams of crystal methamphetamine. He searched defendant's vehicle to find that defendant had applied for a title to the vehicle and that the vehicle contained defendant's mail and prescription medicines, receipts in his name, and many other items.

In order to demonstrate that defendant possessed the methamphetamine, the prosecutor had to prove that defendant had "dominion or right of control over the drug with knowledge of its presence and character." *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017) (quotation marks and citation omitted). A defendant's presence alone is not "sufficient to establish possession; rather, an additional connection between the defendant and the controlled substance must be established." *People v Meshell*, 265 Mich App 616, 622; 696 NW2d 754 (2005) (citation omitted). But "[a]ctual physical possession is not required to meet the possession element." *People v Brown*, 279 Mich App 116, 136; 755 NW2d 664 (2008) (citation omitted). A defendant may actually possess the substance, or may have constructive possession of the substance. *Meshell*, 265 Mich App at 622 (citation omitted). "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance." *Id*. (citation omitted). Possession may be demonstrated with "[c]ircumstantial evidence and the reasonable inferences that arise from the evidence." *Brown*, 279 Mich App at 136-137 (citation omitted).

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, the evidence was sufficient to prove that defendant possessed the methamphetamine. Police found it in defendant's presence, next to him on the ground, near the open door of defendant's vehicle, which contained defendant's personal items. The police had observed defendant alone in his vehicle for an extended period of time, and then watched him interact with items inside his vehicle while he remained outside of it. Defendant was detained while he was alone and outside of his vehicle, and the methamphetamine was present next to him. This is circumstantial evidence that defendant possessed the narcotics. See *Brown*, 279 Mich App at 137 ("Circumstantial evidence that a defendant had the exclusive control or dominion over property on which contraband narcotics are found is sufficient to establish that the defendant constructively possessed the narcotics."). In sum, the totality of the circumstances demonstrates a sufficient nexus between defendant and the methamphetamine.

Next, we conclude that there was sufficient evidence that defendant intended to deliver the methamphetamine to another person. Intent to deliver may be "inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Robar*, 321 Mich App at 126 (quotation marks and citation omitted).

Here, defendant possessed over 9.2 grams of crystal methamphetamine. Deputy Singleton testified that the price of methamphetamine was $140 to $180 for one gram, and that a user typically possesses only 1/16th of a gram. Deputy Andrew Young testified that crystal

methamphetamine cost $140 or $150 a gram, that a user would have 1/4th of a gram to a gram, that a user would typically possess a small amount of the drug in a "user-end baggie" and that the methamphetamine trafficker would have "dealer-end baggies" conversely. Deputy Andrew Young stated that heroin and cocaine were prepackaged drugs, whereas a methamphetamine dealer makes individual packages for customers.

Officer Jeremy Young testified that he found the methamphetamine in a case along with packages of other drugs and a digital scale. In defendant's vehicle he found another scale in one box and sandwich bags in another. He tabulated the large collection of cash that Deputy Singleton recovered from defendant and reported that it totaled $810 in various denominations with another $17 in defendant's wallet.

Viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury verdict, there was sufficient evidence to prove that defendant intended to distribute the methamphetamine. Defendant possessed a large amount of the drug and had instruments of drug trafficking in his possession, like scales and small bags, as well as a large amount of money he kept separate from the money in his wallet. Even where there is no direct evidence about defendant's intent to deliver narcotics, "intent to deliver may be proven by circumstantial evidence and also may be inferred from the amount of controlled substance possessed." *People v Ray*, 191 Mich App 706, 708; 479 NW2d 1 (1991) (citation omitted). We conclude that this is the case here given the amount that defendant possessed and the nature of his possession.

III. CONCLUSION

We affirm defendant's convictions, concluding that: (1) trial counsel was not ineffective; (2) the use of drug profile evidence was permissible and any error did not deprive defendant of his substantial rights; and (3) there was sufficient evidence to convict defendant of possession with the intent to deliver methamphetamine. But we remand to the trial court for the ministerial function of amending the judgment of sentence to accurately reflect that defendant's convictions for carrying a concealed weapon are to be served concurrently to his felony-firearm sentence. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

-14-