## PEOPLE v HUBBARD

Docket No. 144861. Submitted September 7, 1994, at Grand Rapids. Decided March 6, 1995, at 9:50 A.M. Leave to appeal sought.

Rodney A. Hubbard was convicted in the Cass Circuit Court, Michael E. Dodge, J., of carrying a concealed weapon in a motor vehicle and of possession with intent to deliver less than fifty grams of cocaine. At trial, a police detective was permitted to testify, over a defense objection, as an expert witness concerning the characteristics of people who are involved in the drug trade. Although the court did not let the detective express an opinion regarding the guilt of the defendant, the characteristics of drug dealers testified to by the detective closely matched the facts adduced in this case. No cautionary instruction concerning the use of the detective's testimony was given by the court. The defendant appealed.

The Court of Appeals *held:*

The probative value of drug dealer profile evidence is outweighed substantially by the danger of unfair prejudice. Because the prosecution used the drug dealer profile evidence as substantive evidence of the defendant's guilt, it is unnecessary to consider whether such evidence can be used for more limited purposes when accompanied by proper cautionary instructions to the jury. The trial court abused its discretion in admitting the drug dealer profile evidence, and that error cannot be said to be harmless in light of the fact that the question of the defendant's guilt was closely drawn because there was no direct evidence linking the defendant to either the cocaine or the weapon.

Reversed and remanded.

CRIMINAL LAW — EVIDENCE — DRUG DEALER PROFILE EVIDENCE.

The probative value of drug dealer profile evidence is outweighed

REFERENCES

Am Jur 2d, Evidence §§ 333, 338, 349, 350.

Evidence offered by defendant at federal criminal trial as inadmissible, under Rule 403 of Federal Rules of Evidence, on ground that probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury. 76 ALR Fed 700.

substantially by the danger of unfair prejudice where it is admitted without a cautionary instruction and is used as substantive evidence of a defendant's guilt.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Margaret Mary Chiara,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *Ronald E. Steinberg*), for the defendant on appeal.

Before: MacKENZIE, P.J., and GRIFFIN and M. J. TALBOT,* JJ.

GRIFFIN, J. Following a jury trial, defendant was convicted of one count of carrying a concealed weapon in a motor vehicle, MCL 750.227; MSA 28.424, and one count of possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). He was sentenced to concurrent prison terms of 237 days for the conviction of carrying a concealed weapon and 2½ to 20 years for the conviction of possession with intent to deliver. Defendant now appeals as of right. We reverse. In doing so, we hold that expert testimony of drug profiles is not admissible as substantive evidence of a defendant's guilt.

I

On the evening of September 2, 1990, Dowagiac police officers Clinton Roach and Joseph Wheeler were approached by a confidential informant. The informant told the officers that a black male or several black males appeared to be "dealing drugs" from a red or maroon Chevrolet parked outside the Coney Island Lounge. The officers

* Circuit judge, sitting on the Court of Appeals by assignment.

thereafter drove by the lounge, where they observed a vehicle matching the informant's description. They recorded the vehicle's license plate number and performed a Law Enforcement Information Network (LEIN) check. The LEIN check revealed that the license plate on the Chevrolet belonged to a different vehicle.

While Officers Roach and Wheeler were following the suspect vehicle later that evening, they noticed that the automobile was not equipped with outside "rearview" mirrors. After the officers stopped the vehicle, defendant and three other male occupants left the car and immediately started walking away. Defendant had been the driver. The four men returned to their vehicle only after being ordered to do so by the officers. The four suspects were then "pat searched" for weapons.

Defendant was arrested after a LEIN check disclosed that he did not have a driver's license. Defendant's hands were then handcuffed behind his back and he was placed in the back seat of the patrol car. While defendant was handcuffed in the back seat, Officer Wheeler observed defendant "moving up and down, side to side, and leaning his hips outward towards the back of the front seat."

Subsequently, the suspect vehicle was searched. During the search, Officer Wheeler discovered a gray bag underneath the driver's seat. The bag contained a loaded nine-millimeter semiautomatic pistol, a razor blade, and some change.

After defendant was taken to the Dowagiac Police Department, Officer Roach searched the back seat of the patrol vehicle. Officer Roach pulled up the seat and checked the floorboard. He discovered a gray lid to a container for thirty-five-millimeter film wedged between the top and bottom of the rear seat. During defendant's process-

ing at the police station, $1,078 in cash and a quantity of cigarette rolling papers were found on defendant. Later, defendant was transported in the back seat of the patrol car, along with another prisoner, to the Cass County jail.

After the officers left the jail, Officer Wheeler continued to patrol with Officer Roach until approximately 1:30 A.M. Officer Wheeler then left to go home. Officer Roach continued to work at the police station until the next morning. At approximately 7:45 A.M., he returned to the patrol car to gather up his equipment at the end of his shift. On the passenger side floorboard of the back seat, he observed a container for thirty-five-millimeter film. Inside the container, Officer Roach found a clear sandwich bag that contained seventy-eight rocks of crack cocaine.

At trial, after testimony was introduced relating the basic facts as outlined above, the prosecution called Detective William Riley as an expert witness. Detective Riley testified that in his seven years of experience in law enforcement, he had participated in over five hundred drug cases. Further, Detective Riley testified that he had extensive contact with people involved in the sale and distribution of narcotics because of his work as an undercover officer for the prior two years.

After being qualified as an expert witness, Riley testified with regard to the street value of the cocaine seized in the present case. Detective Riley was then asked if he was aware of the "characteristics or indicators of people who are involved in the drug trade which are fairly consistent across the board." Over defense counsel's objection, Riley was permitted to testify to numerous "common characteristics" of drug dealers. These characteristics closely matched the facts of the present case. The trial court did not permit Detective Riley to

express an opinion regarding defendant's guilt or innocence or to express an opinion about defendant's participation in other drug transactions.

As an expert witness, Detective Riley testified to a profile of drug dealers. According to Detective Riley, drug dealers (1) "usually never" use their own vehicle; (2) use vehicles with improper license plates and registration; (3) usually travel in groups of two to six people; (4) rarely carry identification; (5) generally use their "street names" to communicate with each other; (6) seldom carry the trunk key of the vehicle they are driving; (7) typically walk away from their vehicle once stopped by the police; (8) usually carry large amounts of cash; (9) commonly keep drugs and money together; (10) commonly carry weapons; and (11) usually carry razor blades to break up rocks of crack cocaine.

Later, the prosecutor attempted to prove defendant's guilt by arguing that defendant exhibited many of the drug dealer characteristics as identified by Detective Riley:

> Ladies and gentlemen, he also told you about the varies [sic] indicators we talked about which were indicative of delivery or intent to deliver cocaine, and this defendant knew that, a whole lot of them. He had an unexplained amount of money. He lied about having it. He lied about where he was and why he was there. He lied about having it. He lied about where he was and why he was there. He lied about whether he had a driver's license or not. He, in fact, had no I.D. on him whatsoever.

Finally, in his theory of the case, the prosecutor referred to the profile evidence as circumstantial evidence of defendant's guilt.

II

Defendant's argument challenging the admission

of the expert testimony regarding the "common characteristics" of drug dealers is dispositive. Defendant contends that the prosecution impermissibly used a "drug involvement profile" as substantive evidence of defendant's guilt. The admissibility of "drug courier" or "drug dealer" profile evidence is a question of first impression in Michigan. In *United States v McDonald,* 933 F2d 1519, 1521 (CA 10, 1991), cert den 502 US 897 (1991), the Tenth Circuit Court of Appeals defined "profile evidence" as follows:

> What is "profile evidence"? Courts define it in varying terms such as an "informal compilation of characteristics often displayed by those trafficking in drugs," *United States v Campbell,* 843 F2d 1089, 1091 n 3 (CA 8, 1988); "an 'abstract of characteristics found to be typical of persons transporting illegal drugs,'" *United States v Oyekan,* 786 F2d 832, 834 n 2 (CA 8, 1986) (citation omitted); and "the collective or distilled experience of narcotics officers concerning characteristics repeatedly seen in drug smugglers," *Florida v Royer,* 460 US 491, 525 n 6; 103 S Ct 1319, 1339 n 6; 75 L Ed 2d 229 (1983) (Rehnquist, J., dissenting). A profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity.

While courts generally have allowed expert testimony explaining the significance of seized contraband or other items of personal property, see, e.g., *McDonald, supra* at 1522; *United States v Gomez-Norena,* 908 F2d 497, 501-502 (CA 9, 1990), cert den 498 US 947 (1990); *United States v Espinosa,* 827 F2d 604, 611-613 (CA 9, 1987), cert den 485 US 968 (1988); *People v Ray,* 191 Mich App 706; 479 NW2d 1 (1991), the use of drug profiles as substantive evidence of a defendant's guilt has been

widely condemned. See, e.g., *United States v Williams,* 957 F2d 1238, 1241-1242 (CA 5, 1992); *United States v Jones,* 913 F2d 174, 177 (CA 4, 1990), cert den 498 US 1052 (1991); *United States v Carter,* 901 F2d 683, 684 (CA 8, 1990); *United States v Beltran-Rios,* 878 F2d 1208, 1210 (CA 9, 1989). But see *United States v Foster,* 939 F2d 445 (CA 7, 1991); *United States v Teslim,* 869 F2d 316 (CA 7, 1989).

The most often expressed view for the exclusion of drug profile evidence was stated by the Eleventh Circuit Court of Appeals in *United States v Hernandez-Cuartas,* 717 F2d 552, 555 (CA 11, 1983), reh den 721 F2d 822 (CA 11, 1983):

> There is no doubt that most circuits have concluded that the use of drug courier profiles to establish reasonable suspicion should be viewed critically. We concur in this conclusion. Drug courier profiles are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers. Generally, the admission of this evidence is nothing more than the introduction of the investigative techniques of law enforcement officers. Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officers in investigating criminal activity. Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation. Although this information is valuable in helping drug agents to identify potential drug couriers, we denounce the use of this type of evidence as substantive evidence of a defendant's innocence or guilt. [Citations omitted.]

Further, in note, *The admissibility of ultimate issue expert testimony by law enforcement officers in criminal trials,* 93 Colum L R 231, 246-247 (1993), one commentator has warned of the danger

of such expert testimony because of the disproportionate weight the jury may give such evidence:

> A further danger of this type of expert testimony is that it may prejudice the defendant because of its "aura of special reliability and trustworthiness." Law enforcement officials are permitted to testify as experts because their experience gives them knowledge and insight beyond that of most laypersons into the methods of criminals. Jurors are likely to recognize law enforcement officers' enhanced perception in discerning criminal behavior, and may therefore tend to defer to officers' opinions as to the defendant's criminal activity. It is important to note, however, that an officer's expertise lies in determining when a search or arrest is justified, not in determining when a defendant should be convicted. A danger of prejudice exists in that a jury may accept a law enforcement officer's testimony that the defendant was engaging in criminal behavior as substantive evidence of the defendant's guilt. Such reliance is unacceptable when the officer's opinion is based on hunches or on evidence that is insufficient to indicate, beyond a reasonable doubt, that the defendant is guilty.

### III

We agree with the above concerns. We follow the majority of circuits of the United States Court of Appeals that have decided this issue by holding that drug profile evidence is not admissible as substantive evidence of guilt. In our view, the probative value of such evidence is outweighed substantially by the danger of unfair prejudice. MRE 403.[1] Further, on the basis of the current record, we find the reliability of drug profile evidence to be suspect and, therefore, question its value to the trier of fact in deciding the ultimate

[1] MRE 403 is identical with FRE 403.

issue of guilt. MRE 702.[2] We note that such profile evidence often changes to meet the facts of any given case. The broad brush painted by such profiles inevitably will cover many innocent individuals.

We recognize that many jurisdictions allow admission of drug profile evidence for limited purposes such as to explain why a defendant was stopped or to rebut exculpatory testimony by a defendant. We need not address these exceptions because in this case the drug profile evidence was admitted for the improper purpose of proving defendant's guilt.

Our review of the record confirms defendant's contention that the drug profile evidence at issue was admitted as substantive evidence. First, we note that in his offer of proof, the prosecutor stated that the evidence was admissible to "explain some of the reasons certain activities are undertaken to show a consistent pattern of behavior." Further, the prosecutor argued the profile as evidence of defendant's guilt during his closing

---

[2] MRE 702 differs from its federal counterpart FRE 702. MRE 702 specifically limits scientific, technical, or specialized testimony to "recognized" evidence. MRE 702 provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In the present case, the prosecutor failed to establish a sufficient foundation for the admission of the profile evidence. See *People v Young,* 418 Mich 1, 17-25; 340 NW2d 805 (1983). No evidence was adduced below to prove the acceptability or reliability of the drug profile. We disagree with the statements in the plurality opinion of *People v Beckley,* 434 Mich 691, 718-721; 456 NW2d. 391 (1990) (opinion by BRICKLEY, J.), that theories of behavioral science are not subject to scrutiny under the test set forth in *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and *Frye v United States,* 54 App DC 46; 293 F 1013 (1923). "Junk science" has no place in our courtrooms.

argument and referred to it in his theory of the case that was read to the jury. Finally, the trial court failed to give the jury a cautionary instruction limiting the use of the profile evidence. Under these circumstances, we conclude that the trial court abused its discretion in admitting the drug profile evidence at trial.

IV

Having found the drug profile evidence to be inadmissible in the present case, we must now determine whether the error in admitting it was harmless. In assessing a defendant's nonconstitutional allegation of error, the proper inquiry is whether there is "a reasonable probability that the error affected the outcome of the trial." *People v Hall,* 435 Mich 599, 609, n 8; 460 NW2d 520 (1990). See also *People v Mosko,* 441 Mich 496, 503; 495 NW2d 534 (1992); MCL 769.26; MSA 28.1096 and MCR 2.613(A).

After reviewing the record, we conclude that it is "reasonably probable" that the admission of the profile evidence affected the jury's verdict. The question of defendant's guilt was closely drawn. There was no direct evidence that defendant possessed the cocaine found in the back seat of the patrol car or the weapon found under the front seat of the borrowed automobile. Further, the circumstantial evidence pointing to defendant's guilt was not overwhelming. Therefore, we conclude that the error was not harmless.

In view of our disposition of this issue, we need not address defendant's remaining issues on appeal.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.