# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DWAYNE CARVER,

Defendant-Appellant.

UNPUBLISHED
August 29, 2017

No. 328157
Kalamazoo Circuit Court
LC No. 2014-000448-FC

Before: GADOLA, P.J., TALBOT, C.J., and GLEICHER, J.

GLEICHER, J. (*concurring*)

In cases involving allegations of child sexual abuse, the prosecution often presents the testimony of experts who can explain why children may provide inconsistent or even contradictory recollections. When no physical evidence corroborates the prosecution's case, these expert witnesses play a central role. Such testimony, particularly when supplied by an expert with law enforcement credentials, carries an "aura of special reliability and trustworthiness." *People v Hubbard*, 209 Mich App 234, 241; 530 NW2d 130 (1995) (citation omitted). Our Supreme Court has specifically recognized the compelling influence of an expert in a child sexual abuse prosecution: "To a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat." *People v Beckley*, 434 Mich 691, 722; 456 NW2d 391 (1990).

Without consulting an expert regarding a trial strategy in a case he knew would rise or fall on a five-year-old's credibility, defense counsel focused his efforts on discrediting the child in the same manner as he would have challenged the inconsistent testimony of an adult. As the lead opinion carefully elucidates, this decision forced counsel to argue that the complainant was a liar, despite that she had no motive to lie and that her young age rendered her confusion about details understandable. Counsel compounded his error by calling two witnesses he knew or should have known would undermine his case, and whose presence opened the door to the prosecutor's introduction of expert testimony harmful to the defense. Despite defense counsel's awareness that Dr. Swerdlow-Freed could provide an analysis consistent with defendant's innocence, counsel did not seek assistance from him or any other expert. The lead opinion properly concludes that defense counsel performed ineffectively in this regard, and I join the lead opinion in full.

-1-

As its first witness, the prosecution presented the testimony of an expert in child sexual abuse, Dr. Colleen Gushurst. Dr. Gushurst did not examine the complainant. She testified that the type of sexual abuse alleged in this case is usually undetectable in a physical examination, and described in detail the limits of a young child's memories and ability to communicate. Dr. Gushurst also explained why a child might initially identify the offender as someone other than the actual perpetrator. By educating the jury about the complainant's intellectual abilities in an age-centered context, the prosecution proactively muted an attack on the child's credibility.

The defense had no expert to counter the impact of Gushurt's testimony. Instead, the defense called two experts aligned with the prosecution: Ruth Westfall, a clinical social worker and therapist at the Children's Advocacy Clinic, and Detective Jennifer Higby, who investigates sexual assaults for the Kalamazoo Department of Public Safety. Both enhanced the prosecution's case by testifying (on direct and cross-examination) to the reliability of the complainant's claim that defendant sexually assaulted her. Undoubtedly, the prosecution understood that expert testimony would necessarily strengthen its case and was delighted when defense counsel blundered by calling these witnesses.

I respectfully disagree with the dissent's position that even had counsel had the benefit of Swerdlow-Freed's guidance, the outcome in the case would have been unchanged. The dissent rests its "no prejudice" conclusion on two strands of argument. First, the dissent maintains that this was not as "mismatched" a contest as the lead opinion implies, in that the defense succeeded in exposing several weaknesses in the complainant's story: that she implicated defendant only after being threatened with punishment, that she was repeatedly questioned by people untrained in forensic interviewing techniques, and that her account of the assault was riddled with inconsistencies. Second, the dissent contends that expert testimony was unnecessary because "the average juror is equipped with sufficient knowledge to recognize that young children are susceptible to outside influences and are not always accurate informants." Therefore, the dissent postulates, defense counsel reasonably could have decided to forego calling Swerdlow-Freed, "particularly when doing so would invite the prosecution to elicit potentially damaging testimony on cross-examination or call its own expert to rebut any opinion that was favorable to the defense." The record, and the trial court's factual findings, refute these propositions.

The fact that the prosecution called an expert as its first witness, standing alone, disproves the dissent's thesis. Defense counsel's management of the rest of the trial illustrates why expert guidance would have been helpful.

During her direct testimony, the complainant initially agreed with the prosecutor that defendant had done something to her that she did not like, but proceeded to give generally unresponsive answers to the prosecutor's efforts to extract any details. She eventually testified that defendant had penetrated her vagina with his finger. On cross-examination, defense counsel closely questioned the complainant about the time and place-related circumstances surrounding the alleged assault, eliciting multiple contradictions and drawing an objection that counsel was "[t]rying to twist up a little kid here, Judge."

After the complainant and other family members testified, defense counsel called Ruth Westfall, who described the forensic protocol she and other experts in the field use when questioning children, and the results of the forensic interview that she had conducted in this case.

Westfall told the jury that the protocols governing forensic interviews are designed to avoid falsely positive responses, and that she had operated under the protocols when interviewing the complainant. She recounted for the jury that that complainant described the assault and had unequivocally implicated defendant during the forensic interview.

Jennifer Higby continued this theme. Called by the defense, Higby described her background and expertise in the investigation of sexual assault crimes. She advised that she had watched the forensic interview and interviewed the various family members. Higby then told the jury that "[d]uring my investigation and according to my training, I was comfortable that a sexual assault had taken place. I was not going to limit it to a certain day or a certain time as I knew I was dealing with a five-year-old child who did not have a good concept of time." She agreed with the prosecutor that the complainant's description of defendant's "wiggling of a finger" was "very reliable."[1]

There should be no doubt or confusion about these three points: Dr. Gushurst testified as an expert witness, the prosecution presented her testimony to fortify the complainant's veracity, and her testimony considerably bolstered the prosecution's proofs. Further, the prosecution derived nothing but benefit from defense counsel's thoroughly ill-advised decision to call Westfall and Higby. Westfall told the jury that the forensic interview techniques she employed are recognized as effective tools and minimize the risks of false allegations. She acknowledged that children can be vulnerable to suggestions and coaching, but claimed that the methods she used overcame those problems. As an expert in the specialized forensic interviewing techniques used by similarly-trained experts everywhere, Westfall expounded, she could secure accuracy.

Westfall's testimony provided the jury with an expert's conclusion that the complainant had told the truth. The force of this testimony cannot be overstated. Defense counsel had highlighted the weaknesses and inconsistencies in the complainant's direct testimony. The prosecution likely recognized that reinforcement was required; an additional opportunity opened when defendant called Westfall. Westfall rehabilitated the complainant's testimony by again educating the jury about characteristics of children that fall outside the realm of common knowledge and experience. Defense counsel compounded the potency of her presentation by asking whether "false positives do, in fact, happen," only to be met with the devastating answer: "Yes, but they're very rare." Defense counsel lacked an ability to challenge this opinion, heightening the likelihood that it carried weight with the jury.

Given the testimonies of Gushurst, Westfall and Higby, I must respectfully disagree with my dissenting colleague's opinions that defense counsel leveled the evidentiary playing field, or that expert testimony was unnecessary in this case. The prosecution knew that expert opinion would be critical. The prosecution understood that it needed to supply the jury with plausible explanations for discrepancies in the testimony that otherwise pointed toward reasonable doubt. Indeed, Gushurst, Westfall and Higby proved the most potent weapons in the prosecution's trial arsenal. They convincingly promoted their expert abilities to ferret out the truth, and their

---

[1] The court sustained an objection to the "very reliable" aspect of Higby's testimony, but the jury heard it nonetheless.

opinions were essentially unchallenged. Due to poor preparation, the defense never understood the prosecution's case and immeasurably aided it by calling two witnesses who wound up being prosecution experts.

If this were my view alone, it would not count for much. But the trial court shares it, and we must defer to the trial court's findings unless they demonstrate clear error. The trial court wrote:

> In the present case, the key evidence that the prosecution asserted against Defendant was the Complainant's accusations supported by the implication that Complainant had no reason to lie; therefore, the credibility of Complainant in favor of the Defendant was undermined by trial counsel's failure to introduce evidence of false memories and the risk factors associated with the creation of them.

> \* \* \*

> The jury heard testimony from Detective Higby and Ruth Westfell [sic]. Detective Higby testified that she could determine whether an assault had occurred based solely on Complainant's report. Ruth Westfell [sic] testified that misreporting among children alleging sexual abuse is very rare. Had defense had an expert in child memory, the jury would have heard a contradictory point of view on this testimony.

> \* \* \*

> The jury was given the impression that children misreporting sexual abuse is very rare and that Complainant had no reason to lie. Had an expert been present to testify similarly to Dr. Swerdlow-Freed's testimony, the jury would have understood that it was possible that if Complainant reported events that did not actually happen, it was not because she was intentionally lying but because she had developed a false memory through taint and suggestibility.

I can think of no reason to disagree with this analysis, and suggest that it invalidates the dissent's arguments that foregoing an expert was reasonable trial strategy and that the absence of a defense expert made no difference. An expert would have given the jury a scientific basis on which to vote "not guilty" by dispelling the perception created by Gushurst, Higby and Westfall that children almost always tell the truth.

The law, too, refutes the dissent's position. To demonstrate prejudice, a defendant must convince an appellate court of a reasonable probability that, but for his lawyer's errors, the result of the proceeding would have been different. A defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case," only that there exists "a probability sufficient to undermine confidence in the verdict." *Strickland v Washington*, 466 US 668, 693-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). And "[a] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. at 696.

Here, the salient question is whether a reasonably competent attorney, aware of the likely testimony of Gushurst, Westfall and Higby, would have introduced evidence to counter it. Indisputably, it was strategically appropriate for counsel to strenuously cross-examine the complainant and her family, thereby exposing weaknesses in the prosecution's case. But this approach did not preclude calling an expert. Indeed, given the strength of the prosecution's expert's presentation, and the strength of the evidence presented by the de facto prosecution witnesses called by the defense, a reasonable attorney may well have elected to highlight the science: the shortcomings of a child's memory, the ease with which false memories can be created, the suggestibility of a child, and the research reflecting the ability of a professional to ascertain when a child has misrepresented. Without thoroughly educating himself regarding these concepts, counsel was not in a position to make a reasonable strategic choice about how to construct a defense. Given that the prosecution presented an expert and was permitted to bolster its case by asking expert questions of two more, I cannot accept the dissent's contention that defense counsel would have reasonably decided against calling Swerdlow-Freed or someone with similar opinions.

Defendant's conviction turned on whether the jury believed the complainant. The jury heard from three experts that the complainant was believable and likely the assault had occurred as she described it. Dr. Swerdlow-Freed would have cast considerable doubt on these experts' testimonies. His credentials and qualifications far surpassed those of Westfall and Higby. His offered explanations for the complainant's behavior were sympathetic rather than harsh or judgmental. This evidence "would have provided the jury with another viable and impartial perspective on the facts of the case while contradicting the prosecution's theory[.]" *People v Ackley*, 497 Mich 381, 394; 870 NW2d 858 (2015). As in *Ackley*, "expert testimony was not only integral to the prosecution's ability to supply a narrative of the defendant's guilt, it was likewise integral to the defendant's ability to counter that narrative and supply his own." *Id*.

Defendant's jury heard only one side of the story regarding children and their memories. Had counsel been prepared with an expert able to counter that narrative, there is at least a reasonable probability that counsel would have presented the evidence, and that the jury would have been persuaded by it. And expert testimony on this issue would have immeasurably assisted the trier of fact. Perhaps the dissent is correct in asserting that jurors know from everyday experience that children do not always tell the truth. Expert testimony, however, can elucidate just how fallible children's memories really are, and the factors that impair or alter memory. "That jurors have beliefs about this does not make expert evidence irrelevant; to the contrary, it may make such evidence vital, for if jurors' beliefs are mistaken then they may reach incorrect conclusions." *United States v Bartlett*, 567 F3d 901, 906 (CA 7, 2009). As the Seventh Circuit explained in *Bartlett*, a case involving eyewitness identification rather than false memories, "[e]xpert evidence can help jurors evaluate whether their beliefs about the reliability" of memory "are *correct*." *Id*. (emphasis in original). Or, as the trial court put it here:

> The jury was given the impression that children misreporting sexual abuse is very rare and that Complainant had no reason to lie. Had an expert been present to testify similarly to Dr. Swerdlow-Freed's testimony, the jury would have understood that it was possible that if Complainant reported events that did not happen, it was not because she was intentionally lying but because she had developed a false memory through taint and suggestibility.

Contrary to the dissent's view, the trial court neither abused its discretion nor clearly erred in concluding that "but for trial counsel's deficient investigation which led to not consulting an expert for his own knowledge or for the jury, there is a reasonable probability that the result of the trial would have been different." I concur with the lead opinion's conclusion that a new trial is required.

/s/ Elizabeth L. Gleicher