*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARQUIS DEANGELO NELSON,

        Defendant-Appellant.

UNPUBLISHED
February 24, 2022

No. 353548
Calhoun Circuit Court
LC No. 19-002838-FH

Before: STEPHENS, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of delivering less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 46 months' to 25 years' imprisonment. We affirm.

## I. RIGHT TO COUNSEL OF CHOICE

First, defendant argues that the trial court deprived him of his Sixth Amendment right to retain counsel of his choice when it denied his request for an adjournment to retain a different attorney who had previously represented him.

"This Court reviews the grant or denial of an adjournment for an abuse of discretion." *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). But when denial of a continuance implicates constitutional rights, the issue is reviewed de novo. *People v Akins*, 259 Mich App 545, 559; 675 NW2d 863 (2003).

Criminal defendants have a constitutional right to defend themselves through an attorney of their choice. *People v Arquette*, 202 Mich App 227, 231; 507 NW2d 824 (1993); Const 1963, art 1, § 13; US Const, Am VI. "However, the right to counsel of choice is not absolute. A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *Akins*, 259 Mich App at 557.

-1-

When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

When a defendant's choice of counsel has been improperly denied, "it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *United States v Gonzalez-Lopez*, 548 US 140, 148; 126 S Ct 2557; 165 L Ed 2d 409 (2006).

The trial court did not abuse its discretion in denying defendant's request for an adjournment. While defendant asserted a constitutional right to retain counsel of choice, he did not express any reasons for asserting his right, such as by alleging a bona fide dispute with his attorney or articulating any complaints with her performance. Moreover, defendant failed to diligently exercise his right to counsel of choice. Defendant's charges were issued on September 12, 2019, his appointed attorney entered her appearance on September 16, 2019, and he was bound over for trial on October 1, 2019, after a preliminary examination. Thus, the record reflects that this case was pending for at least five months before trial and defendant was aware that he was being represented by appointed counsel, but he did not take steps to retain other counsel.[1] Defendant proceeded to trial with appointed counsel, rather than the counsel of his choice, because he was did not assert his right to retain a different attorney in reasonable time. Further, although the trial court did not find, and the record does not seem to indicate, that defendant made his request with the intention of delaying trial, accommodating him on the eve of trial would have caused a delay and worked against the efficient administration of justice.

In sum, while defendant asserted his right to retain his counsel of choice, he failed to establish that he had a legitimate reason for asserting the right as he did, and his delay in doing so was his own responsibility. For these reasons, the trial court did not abuse its discretion in denying defendant's request for an adjournment so that he could retain other counsel.

---

[1] Defendant argues that he did not retain different counsel in time partly because he was uninformed about his trial date. However, any lack of notice of the trial date was caused by his failure to keep his attorney apprised of his change of address. Regardless of his knowledge of the specific date of trial, he knew the charges were pending and the case was advancing to trial.

## II. IMPROPER TESTIMONY

Next, defendant argues that the testimony of two police officers exceeded the limits of drug-profile evidence because it was admitted as substantive, rather than background, evidence.

Defendant did not object to the admission of the challenged testimony at trial. Accordingly, this evidentiary claim is unpreserved. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Generally, "[a] trial court's decision to admit evidence is reviewed for a clear abuse of discretion." *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). "Similarly, the determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). However, unpreserved evidentiary error is reviewed for plain error. *Coy*, 258 Mich App 12. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"Drug profile evidence has been described as an informal compilation of characteristics often displayed by those trafficking in drugs." *Murray*, 234 Mich App at 52 (quotation marks and citation omitted). "A profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity." *People v Hubbard*, 209 Mich App 234, 239; 530 NW2d 130 (1995) (citation omitted). "Such evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity." *Murray*, 234 Mich App at 53 (quotation marks and citation omitted). "[W]hen the testimony at issue is a drug profile, the expert may not move beyond an explanation of the typical characteristics of drug dealing—in an effort to provide context for the jury in assessing an alleged episode of drug dealing—and opine that the defendant is guilty merely because he fits the drug profile." *Id*.

"Clearly, there is often a very fine line between the probative use of profile evidence as background or modus operandi evidence and its prejudicial use as substantive evidence; the admissibility of profile evidence must effectively be determined case by case." *Id*. at 54-55. "A danger of prejudice exists in that a jury may accept a law enforcement officer's testimony that the defendant was engaging in criminal behavior as substantive evidence of the defendant's guilt." *Hubbard*, 209 Mich App at 241. Therefore, "courts must take into consideration the particular circumstances of a case and enable profile testimony that aids the jury in intelligently under-standing the evidentiary backdrop of the case, and the modus operandi of drug dealers, but stop short of enabling profile testimony that purports to comment directly or substantively on a defendant's guilt." *Murray*, 234 Mich App at 56.

Several factors may be considered to determine the admissibility of drug profile evidence. "First, the reason given and accepted for the admission of the profile testimony must only be for a proper use—to assist the jury as background or modus operandi explanation." *Id*. at 56. "Second, the profile, without more, should not normally enable a jury to infer the defendant's guilt." *Id*. at 57. "Third, because the focus is primarily on the jury's use of the profile, courts must make clear what is and what is not an appropriate use of the profile evidence. Thus, it is usually necessary for the court to instruct the jury with regard to the proper and limited use of profile testimony." *Id*. "Fourth, the expert witness should not express his opinion, based on a profile, that the defendant

is guilty, nor should he expressly compare the defendant's characteristics to the profile in such a way that guilt is necessarily implied." *Id*. While "the distinction between admissible and inadmissible drug profile evidence is often highly subtle, courts nevertheless must evaluate such evidence carefully in order to determine whether it is being used to explain the significance of otherwise innocuous circumstantial evidence, or rather to demonstrate that the defendant fits the profile and is therefore guilty." *Id*. at 58.

Defendant first challenges the testimony of Officer Mikael Ziegler, arguing that Officer Ziegler gave impermissible drug profile testimony when he testified that he saw a hand-to-hand drug transaction occur between defendant and a buyer, that defendant made several stops with his vehicle to deal narcotics, and that it was more than likely, and very reasonable, to conclude that defendant was dealing narcotics on the day in question.

We conclude that Officer Ziegler's testimony was admitted for the proper purpose of helping the jury understand the drug trafficking aspect of the case, and the profile information he provided was not such as should cause a jury hastily to infer defendant's guilt. General information about the typical behavior of drug dealers, including background information about common counter-surveillance maneuvers, common methods for selling controlled substances, and the amount of controlled substances normally carried by dealers in the area, was helpful to explain the significance of otherwise innocuous circumstantial evidence but, on its own, should not have encouraged the jury to infer defendant's guilt from it.

However, although the trial court instructed the jury about the use of expert testimony, it did not make clear what was and was not an appropriate use of Officer Ziegler's profile testimony. Moreover, Ziegler's testimony went beyond the scope of permissible drug profile evidence. He did not merely provide background information about typical characteristics of drug dealers to help explain otherwise innocuous evidence, he also expressly compared defendant's characteristics to the profile in a way that guilt was necessarily implied, and, at times, commented substantively on defendant's guilt. Specifically, Ziegler described defendant's driving, compared it to counter-surveillance measures used by drug dealers, and testified conclusively that defendant was using counter-surveillance techniques to avoid police detection. Additionally, rather than limiting his testimony to his own observations of defendant's actions or explaining the typical behavior of drug dealers, Ziegler testified that he witnessed defendant stop his car on the side of the road, accept another man's money, and give him narcotics in exchange. Ziegler further testified further that, considering all of the evidence, it was "more than likely and very reasonabl[e]" that defendant was dealing narcotics that day, and that, in his expert opinion, defendant sold narcotics to the other man. These were the very elements the prosecution was tasked with proving. MCL 333.7401(2)(a)(*iv*). See also *People v Dickinson*, 321 Mich App 1, 12; 909 NW2d 24 (2017) (explaining that "[t]he elements of delivery of less than 50 grams of heroin are (1) a defendant's delivery (2) of less than 50 grams (3) of heroin or a mixture containing heroin (4) with knowledge that he or she was delivering heroin"). While evidence explaining the significance of the officers' observations in this case could have been properly admitted to help the jury understand the evidentiary backdrop of the case, Ziegler's testimony went beyond what was permissible when he commented substantively on defendant's guilt. Accordingly, its admission amounted to plain error.

However, defendant has not shown that the error affected the outcome of the proceedings in light of the strength of the other evidence. Not all of the officers' testimony was objectionable, and even without Officer Ziegler's impermissible opinions, the remaining police testimony indicated that defendant drove around town making short stops at a variety of residences, which was consistent with typical drug-dealing behavior, engaged in driving maneuvers consistent with counter-surveillance techniques, and participated in a short exchange with a man on the side of the road where defendant and the man traded items before parting ways.

Additionally, the man who engaged in the short transaction with defendant on the side of the road testified at trial, and his account of the exchange aligned with the officers' observations. The man confirmed that he purchased heroin from defendant during that transaction, and the substance found in the man's possession immediately following the exchange tested positive for heroin. Considering the other evidence of defendant's guilt, defendant has failed to show that the error in the admission of Officer Ziegler's drug profile testimony affected the outcome of the trial. *Carines*, 460 Mich at 763. Accordingly, reversal is not warranted.

Defendant also challenges Sergeant Kurt Roth's testimony that he believed defendant engaged in a hand-to-hand narcotics transaction that day. Sergeant Roth was not qualified as an expert witness at trial, and defendant argues that his testimony went beyond the realm of permissible lay opinion and ultimately embraced the issue of guilt.

Under MRE 701, a lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Further, "[a] witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).[2]

Viewed in its entirety, Sergeant Roth's testimony did not amount to an opinion that defendant was guilty merely because he fit the drug profile evidence. Roth testified on the basis of his experience with narcotics sales that the movements between defendant and the other man looked like a hand-to-hand narcotics transaction. However, his testimony was clear that he did not actually see what was transferred. While Roth's characterization of the incident as a hand-to-hand narcotics transfer was similar to some of Officer Ziegler's statements, the distinction between the two is important: Roth focused on his perception of the hand motions defendant and the other man made, whereas Ziegler compared defendant's behavior to the typical behavior of drug dealers and used those comparisons to form conclusions about defendant's actions and, ultimately, his guilt. Because Roth's statement was based on his perception, and assisted the jurors in determining

---

[2] Additionally, where a witness provides lay opinion testimony based on his or her personal experience and knowledge, and he or she would have qualified as an expert, any error in failing to qualify that witness as an expert is harmless. *People v Dobek*, 274 Mich App 58, 76-79; 732 NW2d 546 (2007). We have little doubt that Sergeant Roth would have qualified as an expert on the basis of his experience and training.

whether defendant was involved in narcotics trafficking, it was admissible under MRE 701, and there was no plain error in its admission.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied the effective assistance of counsel when defense counsel failed to object to the testimony of Officer Ziegler and Sergeant Roth. Because there has been no evidentiary hearing to develop defendant's claims of ineffective assistance, our review is limited to counsel's mistakes apparent from the existing record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

The effective assistance of counsel is presumed and a defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "[T]o find that a defendant's right to effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To establish deficient performance, "a defendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "As for prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 302-303 (quotation marks and citation omitted).

Regarding Sergeant Roth's testimony, defendant cannot demonstrate that defense counsel's performance was deficient for failing to object, because, as explained above, Roth's testimony was properly admitted. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel").

Regarding Officer Ziegler's testimony, although "there are times when it is better not to object and draw attention to an improper comment," *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995), we agree with defendant that there was no strategic reason for declining to object. Ziegler stated his improper opinion several times, such that an objection by defense counsel likely would not have drawn additional attention to it. Additionally, although the prosecution argues that defense counsel did not object because she planned to strategically use this testimony to support the defense theory that the officers were predisposed to see drug deals where there were none, the same argument could have been made even with an objection to Ziegler's opinion that defendant was guilty. Because there was no reasonable strategic decision for failing to object to Ziegler's testimony, defense counsel's failure to object rendered her performance deficient in that regard.

However, defendant has not shown a reasonable probability that, but for defense counsel's error, the result of the proceeding would have been different. As explained above, other evidence was admitted to support defendant's guilt, including the testimony of the man who purchased heroin from defendant. Moreover, not all of Officer Ziegler's testimony was objectionable. Even without the impermissible testimony, the evidence indicated that defendant drove around town making short stops at a variety of residences, engaged in evasive driving maneuvers, and

participated in a short exchange on the side of the road where defendant and the other man traded items before parting ways. The prosecution presented ample evidence for the jury to find defendant guilty of the charged offense, and it is unlikely that an objection to Ziegler's objectionable testimony would have affected the outcome of the trial. Therefore, defendant's ineffective assistance claim must fail.

## IV. NOTICE OF INTENT TO SEEK SENTENCING ENHANCEMENT

Defendant alternatively argues that his sentence is invalid because the prosecution failed to provide proper notice of its intent to seek a sentencing enhancement as required by MCL 769.13.

Defendant did not challenge below the prosecution's failure to file a proof of service for the notice of intent to seek a sentence enhancement, thus leaving this issue unpreserved. See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). The issue whether habitual-offender notice requirements were met is "reviewed de novo as a question of law because it involves the interpretation and application of statutory provisions and court rules." *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018). However, unpreserved claims related to an habitual-offender notice are reviewed for plain error affecting a defendant's substantial rights. *People v Burkett*, ___ Mich App ___, ___; ___ NW2d ___ (issued 6/17/2021); (Docket No. 351882); slip op at 7.

MCL 769.13 provides, in relevant part, as follows:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. *The notice shall be filed with the court and served upon the defendant or his or her attorney* within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. *The prosecuting attorney shall file a written proof of service with the clerk of the court*. [Emphasis added.]

Additionally, MCR 6.112(F) provides as follows:

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived or eliminated as allowed under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.

"The purpose of the notice requirement is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense." *Head*, 323 Mich App at 543 (quotation marks and citation omitted).

In *People v Cobley*, 463 Mich 893; 618 NW2d 768 (2000), our Supreme Court vacated the defendant's sentence and ordered that he be resentenced because the prosecutor failed to prove that the notice of sentence enhancement was served on the defendant within 21 days after the defendant was arraigned. However, this Court later held that "[t]he failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual-offender notification." *Head*, 323 Mich App at 543-544. This Court concluded that the prosecution's failure to file the required proof of service did not require resentencing because

> (1) the charging documents apprised the defendant of his fourth-offense habitual-offender status, (2) the defendant received actual notice of the enhancement on the record at a preliminary examination, (3) the defendant and defense counsel exhibited no surprise at sentencing when the defendant was sentenced as a fourth-offense habitual offender, (4) the prosecutor's intention to enhance the sentence was acknowledged on the record by defendant and defense counsel at a pretrial hearing during the discussion of the prosecutor's final plea offer, and (5) and the defendant did not claim that he had any viable challenge to his status as a fourth-offense habitual offender. [*Burkett*, ___ Mich App at ___; slip op at 8 (quotation marks, alteration brackets, and citations omitted).]

Here, defendant argues that *Head* should not be applicable, and, instead, this Court should apply the analysis set forth in *People v Straughter*, unpublished per curiam opinion of the Court of Appeals, issued April 11, 2017 (Docket No. 328956). In *Straughter*, the prosecution failed to provide notice of sentence enhancement as required by MCL 769.13, and this Court, relying on *Cobley*, vacated the defendant's sentence as a habitual offender and remanded the case for resentencing without habitual enhancement. However, *Head*, as a published decision of this Court, is binding, MCR 7.215(J)(1), and *Straughter*, as an unpublished opinion, is not, MCR 7.215(C)(1). See also *Burkett*, ___ Mich App at ___; slip op at 8 (resolving a conflict between *Straughter* and *Head* by stating, "We are bound to follow *Head*, a published decision by this Court that has not been reversed or modified").

In this case, there is no proof of service of the notice of intent to enhance defendant's sentence in the lower court file received by this Court, and the prosecution does not appear to argue that a proof of service was ever filed. However, it appears that defendant had actual notice of the sentence enhancement. The warrant, complaint, felony information, and amended felony information all contained notice that defendant was being charged as a fourth-offense habitual offender, and listed each conviction upon which the prosecution intended to rely to support the enhancement. The Register of Actions reflects that defendant was arraigned on September 12, 2019. Nothing on the record suggests, and defendant does not assert, that he or his counsel did not receive copies of those documents at arraignment or in reasonable time thereafter.

Moreover, defendant was not prejudiced in his ability to respond to the enhanced sentence. Neither defendant nor his counsel appeared to be surprised when he was ultimately sentenced as a fourth habitual offender. The presentence investigation report and sentencing information report contain repeated references to defendant's status as a fourth habitual offender, and neither defendant nor his counsel raised any issues related to the habitual offender status at sentencing, despite their both having reviewed the reports. Additionally, as in *Head*, defendant "has not asserted in the trial court or on appeal that he had any viable challenge to his fourth-offense habitual-offender status." *Head*, 323 Mich App at 545. Because defendant had actual notice of the prosecutor's intent to seek an enhanced sentence, and because defendant was not prejudiced in his ability to respond to that facet of sentencing, any error in the prosecution's failure to file a proof of service was harmless. Defendant has not established plain error affecting his substantial rights and thus is not entitled to resentencing.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto