*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONALD MCCRORY III,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2024
11:30 AM

No. 367537
Macomb Circuit Court
LC No. 2022-001020-FC

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Defendant, Ronald McCrory III, appeals as of right his jury-trial convictions for carjacking, MCL 750.529a; assault with a dangerous weapon, MCL 750.82; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). He was sentenced to 13 to 30 years' imprisonment for the carjacking conviction, to two to four years' imprisonment for the assault with a dangerous weapon conviction, and to two years' imprisonment consecutive to and preceding the first two convictions for the felony-firearm convictions, with credit for 155 days served. We affirm because there are no errors warranting reversal.

## I. BASIC FACTS

On April 21, 2021, Deante Lewis was the victim of a carjacking and assault. Lewis explained that he had borrowed a vehicle to go to a nearby store. When he arrived, he parked in the alley behind the store and then entered to "get a couple drinks." Inside, he recognized Omarion Young, a person with whom he did not get along with. Young was with a group of people near the front of the store. Lewis made eye contact with Young, but did not otherwise have any interactions with him or the people that were with him. Instead, Lewis paid for his items and left.

Outside, he was placing his purchases into the back of the vehicle when he heard Young say his name. Someone else then said "don't shoot him." Lewis stated that Young then hit him from behind with a black handgun. In response, Lewis fled. He stated that he ran through backyards and jumped chain link fences. While he did so, he could see that he was being followed by a white Jeep. Eventually, one of his pursuers caught him in a backyard. Lewis described his assailant as a black male wearing "black, black jeans, black hoodie" and "like, a ski mask" on his

face. That man pointed a gun at him and ordered him to "hand over" the key to the vehicle. Lewis handed over the key and lanyard and then fled again. He ran for two or three more minutes until he reached the safety of his home. From there, a member of his family called the police for Lewis, who was out of breath and who had left his phone in the vehicle back at the store.

At trial, a police sergeant identified the individual who caught Lewis in the backyard as McCrory. His identification was based upon his previous interactions with McCrory, which included in-person encounters and surveillance of McCrory's social media. Following a jury trial, McCrory was convicted as charged. This appeal follows.

## II. SUFFICIENCY OF EVIDENCE

### A. STANDARD OF REVIEW

McCrory first argues that there is insufficient evidence to support his convictions. In particular, he contends that the police sergeant's identification testimony should have been excluded because it invaded the province of the jury. "This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). On appeal, evidence is viewed "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found [the defendant guilty] beyond a reasonable doubt." *Id*. "The standard of review is deferential; a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion . . . and will not be disturbed unless that decision falls 'outside the range of principled outcomes.' " *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), quoting *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Thorpe*, 504 Mich at 252.

### B. ANALYSIS

"The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). For evidence to be sufficient for a guilty verdict, a court must determine "whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Meissner*, 294 Mich App at 452.

McCrory argues that there was insufficient evidence to establish that he was the individual who had carjacked and assaulted Lewis. "Identity of the perpetrator is an element in every criminal case." *People v Galloway*, 335 Mich App 629, 641; 967 NW2d 908 (2020). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). "A jury is free to believe, or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of

review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "[This Court] defer[s] to the credibility assessments made by a jury." *Blevins*, 314 Mich App at 357.

There was sufficient evidence from which the jury could find that McCrory was the individual who carjacked and assaulted Lewis. First, although Lewis did not recognize the man who took his keys at gunpoint, he described that individual as wearing all black. A police sergeant, in turn, testified that the only individual who was wearing all black at the store was McCrory. The sergeant explained that when he watched the surveillance video, he was "a hundred percent sure" that it was McCrory. He explained that McCrory's face was uncovered and that he recognized his "mannerisms" as a result of his previous interactions with McCrory. Additionally, images captured from an Instagram story posted close in time to when the offense was committed were admitted into evidence. Those images depicted individuals wearing the same clothing as the individuals from the surveillance videos. Again, the police sergeant testified that he recognized McCrory in the Instagram story, and noted that he was the only individual wearing all black. McCrory's Instagram account name was tagged on the post, which further supported an inference that he was one of the individuals depicted in the story.[1] Although McCrory argues the sergeant's identification testimony "was hard to believe," we defer " to the credibility assessments made by a jury." *Blevins*, 314 Mich App at 357.

McCrory also asserts that the sergeant's identification testimony should not have been admitted as evidence because it invaded the province of the jury. To support this, McCrory cites *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993), which held that the district court abused its discretion when it allowed the investigating officer to give lay opinion testimony as to the defendant's identity as the individual in surveillance photographs of a bank robbery. The *LaPierre* court explained this kind of testimony "ran the risk of invading the province of the jury" and would be admitted only in limited circumstances when "there is reason to believe that the witness is more likely to identify correctly the person than is the jury." *Id*. The court went on to explain the testimony was permissible where "the witness has had substantial and sustained contact with the person in the photograph." *Id*. The officer in *LaPierre* did not know the defendant, nor had he ever seen him in person, and therefore was in no better place to identify the defendant than the jury was. *Id*.

In contrast, this Court in *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013), allowed the identification testimony of a law enforcement video forensic technician to be admitted into evidence under MRE 701.[2] At the time of trial, MRE 701 permitted the admission of lay opinion testimony, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally

---

[1] The sergeant explained that he knew it was McCrory's account name because he was one of McCrory's social media followers.

[2] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. We rely on the version of MRE 701 in effect at the time of trial.

based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

The officer in *Fomby* identified individuals from still photographs captured from surveillance video, but did not specifically identify the defendant as being in the video or images. *Id*. This Court explained that, unlike the officer in *LaPierre*, this officer's testimony "only linked individuals depicted in the surveillance video as being the same individuals depicted in the still photographs." *Id*. Moreover, "because [the officer] was comparing the video surveillance video to still images that he himself had [taken] from the . . . video, [the officer] was in the best position to identify the individuals in the photographs as being the same as those depicted in the video." *Id*.

In this case, the sergeant's identification testimony is rationally based upon his own perception that came about as a result of his personal history with McCrory. The sergeant testified he first met McCrory in person in June 2019, and again in September 2020. He testified that he began following McCrory on social media in the fall of 2019, as part of an investigation into reckless driving complaints involving high-end, unregistered vehicles. The sergeant followed McCrory on social media for a year-and-a-half at the time of this offense, and McCrory regularly posted on his Instagram account. The sergeant's identification testimony is also admissible under MRE 701 because it is helpful to the jury. Moreover, the sergeant testified he captured the images of McCrory and his codefendants from a clear video on an Instagram story; however, the quality of the images was diminished because they were still images from that video. Similar to the officer in *Fomby*, the sergeant was in the best position to identify the individuals from those photographs because he was the one who had taken them. Next, the sergeant testified the surveillance videos shown at trial were "a little darker" than the videos he had first reviewed. The lower quality of the images put him in a better position to correctly identify McCrory as the individual in the images than the jury. Lastly, the sergeant did not specifically express an opinion regarding McCrory's guilt or innocence.

Based upon the foregoing, we conclude that the trial court did not abuse its discretion when it allowed the sergeant to identify McCrory as the individual in the surveillance video and Instagram story. Indeed, his testimony did not invade the province of the jury, which was not in an equal position to identify McCrory.[3]

---

[3] In his brief on appeal, McCrory suggests that his "only crime was potential gang affiliation," and he argues that "due process requires that until an addict or gang member is proven beyond a reasonable doubt to act in conformity therewith, our society should not find [them] guilty by association." The only caselaw defendant cites states: "Drug-profile evidence . . . cannot be used as substantive evidence of a defendant's guilt." *People v Hubbard*, 209 Mich App 234, 239; 530 NW2d 130 (1995). McCrory merely suggests replacing the word "drug" with "gang." To the extent McCrory argues that the sergeant should not have been permitted to testify about McCrory's gang association because it was unfairly prejudicial, McCrory fails to develop this argument or to cite any other authority to support this position. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he

III. SENTENCING

A. STANDARD OF REVIEW

McCrory argues that his minimum sentence of 13 years' imprisonment for the carjacking conviction was unreasonable and disproportionate considering the sentencing factors set forth in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). "Sentencing issues are reviewed by this Court for an abuse of discretion by the trial court." *People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19, 22 (2000). "A trial court abuses its discretion when it imposes a sentence that is not proportional to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 661. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). "[A]ppellate courts must review all sentences for reasonableness. . . ." *Id*. at 352. The test for reasonableness requires consideration of "whether the sentence is proportionate to the seriousness of the matter . . ." *Id*. quoting *People v Steanhouse*, 500 Mich 453, 475; 902 NW2d 327 (2017). See *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). "The defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate. . . ." *Posey*, 512 Mich at 359.

B. ANALYSIS

In *Snow*, 386 Mich at 592, our Supreme Court outlined the following factors to be considered in sentencing: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." McCrory argues that, when considering the *Snow* factors, his sentence is unreasonable because it is disproportionate to the circumstances of the carjacking given his lack of criminal history *as an adult*, the fact that he was 19 years of age at the time the offense was committed, and his traumatic upbringing. We disagree.

McCrory references the presentence investigation report (PSIR) when asserting that his childhood and his upbringing should weigh in favor of the conclusion his sentence is disproportionate and unreasonable. "[T]rial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). In this case, the trial court received a copy of the PSIR and referred to it at sentencing. The court was aware of the contents of the PSIR—including any mitigating factors from defendant's childhood—and could have considered them in sentencing defendant, but was not required to do so. See *id*.

Next, McCrory argues that his lack of an adult criminal history should be a factor in favor of resentencing. McCrory contrasts his sentence with his codefendant Young's minimum sentence of nine years. He argues his sentence is disproportionate in comparison when considering Young's

---

give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Given the cursory nature of this argument, we conclude that it has been abandoned on appeal.

numerous prior convictions for violent crimes. Likewise, he complains that Young, who was "more responsible" was the individual "who actually initiated" their criminal escapade against Lewis. Although McCrory points to Young as more responsible, the jury found beyond a reasonable doubt that McCrory was also responsible. Moreover, trial courts must impose sentences that are "individually tailored and proportionate to both the individual circumstances of the offender and the seriousness of the offenses." *People v Kaczorowski*, 190 Mich App 165, 173; 475 NW2d 861 (1991). The trial court was required to focus on *McCrory's* individual circumstances, not those of his codefendants, when sentencing him.

"[T]he Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. The trial court recounted McCrory's *juvenile* record of "assault and battery, an assault and battery with possession of a BB gun, breaking and entering, receiving concealing stolen property, aggravated assault, assault and battery, home invasion, assault and battery," along with "as an adult, assault and battery and then [this offense]." McCrory has an extensive criminal history, and the trial court did not err by considering it. Although McCrory desired the court to focus on his more limited record as an adult, the court did not err by considering his extensive juvenile record.

Finally, McCrory cites to *People v Parks*, 510 Mich 225, 268; 987 NW2d 161 (2022), where our Supreme Court held the mandatory sentence of life imprisonment without the possibility of parole for 18-year-olds convicted of first-degree murder violates the "principle of proportionality" and the Michigan Constitution requires they receive the same "individualized sentencing" as juveniles. McCrory argues *Parks* should extend to 19-year-olds. However, the *Parks* Court specifically stated: "[O]ur opinion only applies to 18-year-olds." *Id*. at 245. And McCrory's circumstances are distinguishable from the holding in *Parks* because he has not been sentenced to life in prison without parole, nor has he been convicted of first-degree murder. Furthermore, the trial court referred to McCrory's youth at sentencing. The trial court could have considered defendant's age as a mitigating factor, but was not required to do so. See *Bailey*, 330 Mich App at 63.

In sum, McCrory's within-guidelines sentence is reasonable and proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *Sabin*, 242 Mich App at 661. It is also consistent with the goals of sentencing outlined in *Snow*. McCrory is not entitled to resentencing.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen A. Feeney