*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEONDRIC DWAYNE THOMAS,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2024

No. 365133
Monroe Circuit Court
LC No. 2021-246593-FH

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

Deondric Dwayne Thomas appeals as of right his jury trial conviction of one count of possession with intent to deliver cocaine, MCL 333.7401(2)(a)(*iv*) (less than 50 grams). Thomas argues the trial court improperly admitted drug profile evidence, his counsel was ineffective, and there was insufficient evidence to sustain his conviction. We affirm Thomas's conviction because although the trial court erred in admitting the challenged evidence, the error did not affect the outcome of Thomas's trial, his counsel was not ineffective, and the evidence sufficed to sustain his conviction.

## I. BACKGROUND

This case arises from a traffic stop of a vehicle driven by Thomas. Monroe Police Department officer Jacob Winter was patrolling a neighborhood when he saw Thomas pull away from a suspected drug house. Officer Winter stopped Thomas for making an improper right turn. After learning Thomas's license was invalid, Officer Winter asked him to step out of the vehicle. Officer Winter walked Thomas to the front of the patrol car, asked him to place both his cell phones on the hood, and searched his person. Officer Winter found $1,046 in cash in mostly smaller denominations. Thomas said he earned the money from cutting hair. Officer Winter also found a razor blade in Thomas's hat. Thomas consented to a search of his vehicle. Officer Winter found a piece of a white, chunky substance, believed to be crack cocaine, packaged in a small plastic bag in the vehicle's center console. The substance was never tested. A small blue digital scale and a plastic bag containing smaller plastic bags were also found in the center console.

Officer Winter told Thomas he was under arrest for possession of suspected narcotics. Thomas grabbed his cell phones off the hood of the patrol car and tried to flee, but Officer Winter was able to grab his shirt. After being threatened with a taser, Thomas stopped resisting. Officer Winter wore a body camera for the duration of his interaction with Thomas. However, during this altercation, the body camera flew off and did not capture any footage of the traffic stop after Thomas attempted to flee.

Officer Winter then searched Thomas again and noticed a larger bag of suspected crack cocaine hanging out of the bottom of Thomas's pant leg. This bag was tested and confirmed to be 5.6193 grams of crack cocaine. Officer Winter did not find any drug paraphernalia typically used to ingest controlled substances, like needles, tourniquets, or rigs,[1] in Thomas's possession. Thomas was bound over and charged with possession with intent to distribute cocaine less than 50 grams (second offense), MCL 333.7401(2)(a)(iv) (Count I); possession of methamphetamine (second offense), MCL 333.7403(2)(b)(i) (Count II); two counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1) (Count III and Count IV); and operating a vehicle with a suspended or revoked license (second offense), MCL 257.904(1) (Count V).

At trial, the prosecution relied on expert testimony from Detective Sergeant Joshua Dorow to establish Thomas's intent to distribute cocaine. Detective Dorow is a Michigan State Police trooper on the Monroe Area Narcotics Team (MANTIS), with 12 years of experience in controlled substance enforcement, and he is trained in controlled substance raids, drug trafficking investigations, surveillance, undercover buys, and cellular phone analysis. The prosecution moved to qualify Detective Dorow as an expert under MRE 702 on the basis of his training, knowledge, experience, and expertise in controlled substance enforcement.

Defense counsel objected to Detective Dorow's use as an expert witness to prove intent to distribute, but he was overruled. Before the trial court allowed Detective Dorow to testify as an expert witness under MRE 702, however, it gave a cautionary instruction to the jury: "[Detective Dorow's] testimony is not to be used to determine whether [Thomas] committed the crime that he's charged with. The testimony may be considered by you only for the purpose of understanding certain practices related to the sale of controlled substances."

Detective Dorow testified that cocaine is usually snorted or smoked, and is typically sold in $20, $50, or $100 packs. He said ⅛ or 1/10 of a gram of cocaine is typically packed in a small plastic bag, or in the corner of a plastic bag torn off and knotted. He also said a heavily addicted cocaine user typically ingests one gram a day. Detective Dorow opined that it is very uncommon for a person to have 5.6 grams of cocaine in their possession for personal use. He said this amount would typically be found on a seller. He also testified that digital scales are commonly used by a seller to weigh narcotics before a drug deal, and possessing small plastic bags is associated with packaging small amounts of narcotics for distribution. According to Detective Dorow, it is very common for a drug dealer to have large amounts of cash on them, most commonly in $20 bill denominations. He said drug dealers also commonly use multiple cell phones.

---

[1] The jury was provided the following definition of a "rig": "a hypodermic needle with a tourniquet which aids in the use of different sorts of narcotics."

The trial court reiterated the cautionary instruction during final jury instructions, limiting how the jury was to use Detective Dorow's testimony. The jury convicted Thomas of possession with intent to distribute cocaine less than 50 grams (Count I), and resisting and obstructing arrest (Count IV); his remaining charges were dismissed. Thomas was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 42 to 480 months for Count I, and 42 to 180 months for Count IV, to run concurrently. Thomas now appeals his conviction of possession with intent to distribute cocaine.

## II. ANALYSIS

## A. DRUG PROFILE EVIDENCE

Thomas contends that Detective Dorow offered improper drug profile testimony that swayed the jury's intent-to-deliver finding and, as a result, denied him a fair trial. We disagree.

"[T]he determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). "An abuse of discretion exists when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there is no justification for the ruling made." *Id*. However, Thomas failed to preserve any specific claims challenging the substance of Detective Dorow's testimony.

To preserve a claim of error regarding the admission or exclusion of evidence, a party must timely object or move to strike the admitted evidence on the record. MRE 103(a)(1). See also *People v Miller*, 211 Mich App 30, 42; 535 NW2d 518 (1995) (holding that where the defendant did not object to opinion testimony at trial, the issue was not preserved for review). The grounds for objection at trial and grounds raised on appeal must also be the same. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Further, objecting to the qualifications of a witness to testify as an expert does not preserve a later objection to the substance of the expert's testimony unless defense counsel also timely and contemporaneously objects to the problematic testimony when given. *People v Bynum*, 496 Mich 610, 628-629; 852 NW2d 570 (2014). This is true even where defense counsel, while objecting to the qualification of the witness as an expert, makes a general objection to the relevance of the expert's testimony. *Id*.

Here, Thomas's trial counsel timely objected to Detective Dorow's qualification as an expert under MRE 702. Defense counsel also argued that the content of the testimony would be more prejudicial than probative. Certainly, trial counsel did more than object to the expert's qualifications and relevance. Beyond that initial general objection, though, defense counsel failed to object to specific portions of Detective Dorow's testimony. Therefore, any specific claims of error about the substance of his testimony must be examined under plain-error review. *Bynum*, 496 Mich at 628-629.

"Unpreserved evidentiary issues are reviewed for plain error affecting substantial rights . . .." *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022). To avoid forfeiture of an unpreserved issue under plain-error review, three requirements must be met: (1) error must have occurred, (2) the error was plain, meaning it was clear or obvious, and (3) the plain error affected substantial rights, meaning it must have been prejudicial, affecting the outcome of the

lower court proceedings. *People v Grant*, 445 Mich 535, 548-550; 520 NW2d 123 (1994). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (citation and quotation marks omitted). The defendant bears the burden of persuasion regarding whether the error was prejudicial. *Id.* at 763.

As to the general admissibility of Detective Dorow's testimony, we have held that a prosecutor may use expert testimony from police officers to aid the jury in understanding the evidence in controlled substance cases. *People v Williams*, 198 Mich App 537, 541-542; 499 NW2d 404 (1993). In *Williams*, the police officer's expert testimony concerned how the evidence found in the defendant's house was routinely used to cut, weigh, package, and sell controlled substances. The officer was qualified because of his training and experience. The information he provided was also not within common knowledge and "was useful to the jury in determining [the] defendant's intent at the time he possessed the drugs." *Id.* at 542. These considerations led this Court to conclude that the trial court did not abuse its discretion in admitting the officer's testimony. *Id.* Here, because defense counsel on appeal does not renew trial counsel's objection to Detective Dorow's qualifications as an expert, we turn to the substance of his testimony.

A conviction of possession with intent to deliver a controlled substance under MCL 333.7401(2)(a)(*iv*) requires the prosecution to prove four elements beyond a reasonable doubt: (1) the recovered substance is a controlled substance under MCL 333.7214; (2) the substance is in a mixture weighing less than 50 grams; (3) the defendant was not authorized to possess the substance; and (4) the defendant knowingly possessed the substance intending to deliver it. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). On appeal, Thomas particularly challenges the expert testimony related to the fourth element, intent to distribute cocaine.

According to Thomas, Detective Dorow's testimony constituted an improper use of drug profile evidence because it served as substantive evidence of his guilt. Although we agree that some of Detective Dorow's testimony was erroneously admitted, we ultimately disagree with Thomas's arguments.

"Drug profile evidence has been described as an 'informal compilation of characteristics often displayed by those trafficking in drugs.'" *Murray*, 234 App at 52, quoting *People v Hubbard*, 209 Mich App 234, 239; 530 NW2d 130 (1995) (citation omitted). "A profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity." *Hubbard*, 209 Mich App at 239. "Drug profile evidence is essentially a compilation of otherwise innocuous characteristics that many drug dealers exhibit, such as . . . the carrying of large amounts of cash." *Murray*, 234 Mich App at 52-53. "Such evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity." *Id.* (citation and quotation marks omitted). This Court stated in *Murray*:

> In other words, these characteristics may not necessarily be connected to or inherently part of the drug trade, so that these characteristics could apply equally to innocent individuals as well as to drug dealers. It is for this reason that the majority of courts have held that drug profile evidence is inadmissible as substantive

evidence of guilt, because proof of crime based wholly or mainly on these innocuous characteristics could potentially convict innocent people. [*Id*. (citation and quotation marks omitted.)]

Despite its prejudicial effect, courts have generally allowed expert testimony amounting to drug profile testimony if it explains "the significance of items seized and the circumstances obtaining [sic] during the investigation of criminal activity." *Id.* In doing so, "the expert may not move beyond an explanation of the typical characteristics of drug dealing . . . and opine that the defendant is guilty merely because he fits the drug profile. Such testimony is inherently prejudicial and constitutes an inappropriate use of the profile as substantive evidence of guilt." *Id.* at 54. This Court also stated in *Murray* that there is often a "fine line between the probative use of profile evidence as background or modus operandi evidence and its prejudicial use as substantive evidence" of guilt, requiring a case-by-case determination of whether the profile evidence is admissible. *Id.* at 54-55. *Murray* instructed courts to "enable profile testimony that aids the jury in intelligently understanding the evidentiary backdrop of the case[,] . . . but [to] stop short of enabling profile testimony that purports to comment directly or substantively on a defendant's guilt."

The *Murray* Court outlined a non-exhaustive list of factors to consider when distinguishing between appropriate and inappropriate drug profile evidence: (1) the reason given and accepted for the admission of the profile testimony, which must only be used to assist the jury as background or modus operandi explanation; (2) whether the profile, without more, would enable a jury to infer the defendant's guilt;[2] (3) whether the court instructed the jury regarding the proper and limited use of profile testimony; and (4) whether the expert witness opined on the basis of a profile that the defendant is guilty, or compared the defendant's characteristics in such a way that guilt is necessarily implied. *Id.* at 57-58.

Here, the first and third factors weigh in favor of concluding that Detective Dorow's expert testimony was appropriate drug profile evidence. The prosecutor stated that Detective Dorow's testimony was offered to assist the jury in understanding the evidence—specifically, in understanding "what 5.6 grams of cocaine means, what $1,046 means in the [context of] controlled substance investigation[s], what a digital scale means, [and] what baggies are used for. In their

---

[2] A drug profile should not normally, on its own, enable a jury to infer the defendant's guilt. *Murray*, 234 Mich App at 57. See also *People v Nelson*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2022 (Docket No. 353548), p 4:

> General information about the typical behavior of drug dealers, including background information about common counter-surveillance maneuvers, common methods for selling controlled substances, and the amount of controlled substances normally carried by dealers in the area, was helpful to explain the significance of otherwise innocuous circumstantial evidence but, on its own, should not have encouraged the jury to infer defendant's guilt from it.

We recognize unpublished authorities are not binding on this Court but may be considered as persuasive authority. *People v Daniels*, 311 Mich App 257, 268 n 4; 874 NW2d 732 (2015).

plain—just by looking at them, a jury might not know what they're used for or how they're used in controlled substance trafficking." The prosecutor further explained: "He's not here to comment on the guilt or innocence of the defendant . . . ." This is a permissible intended use of drug profile evidence: to provide background information on behaviors which are not within common knowledge to help the jury understand the evidence and decide the ultimate issue of guilt.

Regarding the third *Murray* factor, the trial court twice instructed the jury that Detective Dorow's testimony was not to be used to determine whether Thomas had intent to deliver cocaine, but only to aid in understanding certain practices related to the sale of controlled substances. In *Murray*, the Court "refuse[d] to operate on the premise that jurors cannot comprehend the difference between substantive evidence and background testimony intended to help them understand the evidence, especially where this difference is pointed out to them." *Murray*, 234 Mich App at 61. We operate on the same premise here.

The second and fourth factors, however, give us pause. *Murray* instructs us on how to apply the second factor: "the prosecutor must introduce and argue some additional evidence from the case that the jury can use to draw an inference of criminality . . . . In other words, the pieces of the drug profile by themselves should not be used to establish the link between innocuous evidence and guilt." *Murray*, 234 Mich App at 57. This requires us to evaluate the drug profile in isolation from the rest of the testimony presented at trial. Close examination of Detective Dorow's testimony reveals he connected the drug profile to Thomas's circumstances three separate times: first, when stating the substance seized from Thomas's car looked like crack cocaine; second, when stating the number of baggies in Thomas's car would usually be found on a seller; and third, when stating the amount of cocaine found on Thomas's person, 5.6 grams, would usually be found on a seller. If a jury listened to Detective Dorow's testimony in isolation, it would know Thomas possessed many small plastic baggies and enough crack cocaine typically possessed by a seller. This, without more, is enough to conclude Thomas had the intent to distribute cocaine. The jury would not have needed Officer Winter's testimony that he found scales, two cell phones, a large sum of cash, and no drug use paraphernalia, to draw the same conclusion. Accordingly, the second Murray factor weighs in favor of concluding that Detective Dorow's testimony was inappropriate. *Murray*, 234 Mich App at 57.

The fourth *Murray* factor further illustrates why aspects of Detective Dorow's testimony were problematic. We take particular issue with the following question posed by the prosecution to Detective Dorow:

> *Q.* The 5.6 grams of cocaine, is that amount one that you would typically find with a user or a seller of cocaine?
>
> *A.* A seller.

This specific testimony matches up too squarely with Thomas's circumstances because he was found with 5.6193 grams of cocaine in his possession. This testimony answers a question on the one element in dispute at trial: were these drugs for personal use or delivery? It compares Thomas's characteristics in such a way that guilt is necessarily implied as to the only element of the offense in question—the intent to deliver. *Murray*, 234 Mich App at 58. The testimony here also differs in nature from the facts of *People v Nelson*, unpublished per curiam opinion of the

-6-

Court of Appeals, issued February 24, 2022 (Docket No. 353548), p 4, where this Court held testimony about the amount of controlled substances normally carried by sellers is permissible *without* such direct comparison to the defendant's actual circumstances.

The circumstances of this case likewise contrast from those in *Hubbard*, 209 Mich App at 242-243, where the defendant similarly challenged his intent-to-deliver conviction. In *Hubbard*, the defendant was handcuffed and placed in the backseat of a police car after a LEIN check disclosed he was driving without a license. While he was handcuffed in the backseat, the arresting officer noticed the defendant "moving up and down, side to side, and leaning his hips outward towards the back of the front seat." *Id.* at 236. After the defendant was taken to the police department, the officer found a clear sandwich bag containing crack cocaine on the floorboard of the police car near where the defendant previously sat.

At trial, the prosecutor called a different police officer as an expert witness to provide a drug profile. Although *the witness* did not connect any facts from the drug profile to the defendant's circumstances, as is the case for Thomas, this Court still held that the trial court erred in admitting drug profile evidence at trial, and the error probably affected the jury's verdict, under the following circumstances: (1) in his offer of proof, the prosecutor stated that the evidence should be admissible to "explain some of the reasons certain activities are undertaken to show a consistent pattern of behavior"; (2) the prosecutor attempted to prove the defendant's guilt at closing arguments by arguing that the defendant exhibited many of the drug dealer characteristics identified by the expert; and (3) the trial court failed to give the jury a cautionary instruction limiting the use of the profile evidence. *Id.* at 237-238, 242-243.

Here, the prosecutor said the purpose of offering Detective Dorow's testimony was to assist the jury in understanding the evidence. This is different from the offer of proof in *Hubbard*, which was to draw conclusions and comparisons to the defendant's specific circumstances—conclusions and comparisons that jurors should be permitted to draw on their own. In further contrast to *Hubbard*, the prosecutor here only mentioned Detective Dorow's testimony twice during his closing argument, first to state that Detective Dorow was able to identify the crack cocaine seized from the vehicle just by looking at it, and secondly that possessing drugs without drug use paraphernalia is consistent with distribution. And the trial court here twice properly instructed jurors to limit their consideration of Detective Dorow's testimony.

We reiterate our concern that aspects of Detective Dorow's testimony were problematic by comparing Thomas's circumstances in such a way that implied he had the intent to distribute and was, therefore, guilty. For this reason, we hold the trial court plainly erred in admitting expert testimony that drew comparisons to the specific evidence in Thomas's case. And as we have for decades, we strongly discourage drug profile testimony that embraces the ultimate issue of guilt. *Murray*, 234 Mich App at 59; *Hubbard*, 209 Mich App at 239-241. Here, however, despite the clear implication of Thomas's guilt, and because of the differences between this case and *Hubbard*, Thomas had not shown this plain error affected his substantial rights.

In addition to the prosecutor's proper purpose and the curative instructions, the record reflects that even without Detective Dorow's impermissible testimony, or any expert testimony, the remaining record evidence from Officer Winter would have allowed the jury to reach the same conclusion. Specifically, there was overwhelming evidence supporting the intent to deliver

element, which we cover extensively below in considering Thomas's sufficiency argument. Accordingly, we conclude that despite the plain error in admitting Detective Dorow's testimony regarding 5.6 grams of cocaine and the number of baggies in Thomas's car, the error did not affect Thomas's substantial rights because it would not have affected the outcome of his trial.[3]

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Thomas alternatively argues defense counsel was ineffective for failing to object to the substance of Detective Dorow's allegedly prejudicial testimony, which he contends changed the outcome of his trial. We disagree.

"Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "To establish ineffective assistance of counsel, a defendant must show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Id*. at 531-532 (quotation marks and citation omitted).

"Counsel's performance is strongly presumed to have been born from a sound trial strategy," and the defendant carries a heavy burden to prove otherwise. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (quotation marks and citation omitted); *Isrow*, 339 Mich App at 531. "If counsel's strategy is reasonable, then his or her performance was not deficient." *Id*. at 532 (quotation marks and citation omitted). Prejudice is demonstrated when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Although defense counsel objected to Detective Dorow's use as an expert under MRE 702, he did not timely object to specific substantive testimony. Defense counsel in particular did not place any objection on the record when the prosecutor asked whether 5.6 grams of cocaine is typically found on a seller. This performance was deficient because there is no objectively reasonable strategy to justify failure to object to a question that asks an expert to opine on an element material to Thomas's guilt. See *People v Randolph*, 501 Mich 1, 12; 917 NW2d 249 (2018) ("[C]ounsel may decide, for strategic reasons, not to object to an obvious error . . . . If counsel's strategy is reasonable, then his or her performance was not deficient."(cleaned up)); see

---

[3] *Nelson*, unpub op at 4, is instructive. In that case, the expert witness provided background information about typical characteristics of drug dealers, but "also expressly compared [the] defendant's characteristics to the profile in a way that guilt was necessarily implied, and, at times, commented substantively on [the] defendant's guilt." The expert also testified that it was "more than likely and very reasonabl[e]" that the defendant was dealing drugs. *Id*. The expert testimony challenged in *Nelson*, which this Court ruled constituted plain error, far exceeds the testimony here in commenting substantively on Thomas's guilt. Nonetheless, because the defendant in *Nelson* could not demonstrate the error affected the outcome of his trial "in light of the strength of the other evidence," this Court held that reversal was unwarranted. *Id*. at 4-5.

also *People v Abcumby-Blair*, 335 Mich App 210, 234-235; 966 NW2d 427 (2020) (concluding that the challenged testimony was inadmissible, no strategic motive was present to explain trial counsel's failure to object to the testimony, and thus, the failure to object constituted an objectively deficient performance). Further, defense counsel indicated he knew the testimony would likely be prejudicial at some point, because he stated as much in his initial general objection to Detective Dorow being qualified as an expert.

Nevertheless—as we explain next—there is overwhelming evidence to support an intent-to-deliver finding despite this objectively deficient performance; therefore, there is no reasonable probability the verdict would have been different had counsel performed reasonably. *Isrow*, 339 Mich App at 532. Thomas cannot show that he was prejudiced by counsel's ineffective assistance.

## C. SUFFICIENCY OF THE EVIDENCE

Thomas contends that the evidence is insufficient to sustain his conviction because even though he possessed cocaine, it was not broken down into smaller quantities, and there was no drug residue on the bags or scales found. He also contends there is no proof he possessed $1,046 in cash for nefarious reasons. We disagree.

Sufficiency-of-the-evidence claims are reviewed de novo. *People v Osby*, 291 Mich App 412, 415; 804 NW2d 903 (2011). We must view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003). When an appellate court reviews the evidence supporting a conviction, factual conflicts are also to be viewed in a light favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended by 441 Mich 1201 (1992). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000); see also *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) ("This Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses.") (quotation marks, citation, and alteration omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*.

MCL 333.7401(1) and MCL 333.7401(2)(a)(*iv*) state:

(1) Except as authorized by this article, a person *shall not* manufacture, create, *deliver, or possess with intent to* manufacture, create, or *deliver a controlled substance*, a prescription form, or a counterfeit prescription form.

* * *

(2) A person who violates this section as to:

-9-

(a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section [MCL 333.]7214(a)(*iv*)[4] and:

\* \* \*

(*iv*) Which is in an *amount less than 50 grams, of any mixture containing that substance* is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00, or both. [Emphasis added.]

A conviction of possession with intent to deliver a controlled substance under MCL 333.7401(2)(a)(*iv*) requires the prosecution to prove four elements beyond a reasonable doubt: (1) the recovered substance is a controlled substance under MCL 333.7214; (2) the substance is in a mixture weighing less than 50 grams; (3) the defendant was not authorized to possess the substance; and (4) the defendant knowingly possessed the substance with an intent to deliver. *McGhee*, 268 Mich App at 622. On appeal, Thomas contends he was merely a drug user and challenges the sufficiency of the evidence with respect to the intent to deliver element.

The only element the parties dispute is Thomas's *intent to deliver*. "Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packed, and from other circumstances surrounding arrest." *Wolfe*, 440 Mich at 524. *Id*. Given our concern about some of Detective Dorow's testimony, we highlight the record evidence aside from the problematic testimony that supported the jury's conclusion that Thomas had the intent to deliver cocaine. Officer Winter seized many items from Thomas's vehicle, including scales; small, empty plastic bags; and one small plastic bag allegedly containing cocaine. Detective Dorow testified that scales were usually found on a drug dealer and were used for the distribution of narcotics. In addition, Thomas had two cell phones in his possession and kept a razor blade in his hat. Detective Dorow testified it is typical for dealers to carry multiple cell phones. On the basis of these facts, it is reasonable to infer Thomas intended to deliver cocaine. Defense counsel's suggestion that Thomas bought cocaine in bulk for use over the weekend is also implausible in light of the drug trafficking paraphernalia, and lack of drug use paraphernalia, found in the vehicle. See *People v Hardiman*, 466 Mich 417, 422 n 5; 646 NW2d 158 (2002) (intent to deliver can be inferred from the packaging of controlled substances, coupled with the lack of drug use paraphernalia found where the defendant was arrested). When viewed in the light most favorable to the prosecution, this evidence sufficed to support Thomas's conviction.

---

[4] MCL 333.7214 states cocaine is a schedule 2 controlled substance.

## III. CONCLUSION

The trial court plainly erred by admitting the challenged drug profile testimony, but Thomas is unable to demonstrate his substantial rights were affected by this error. Likewise, defense counsel should have objected to some of the drug profile testimony but Thomas cannot show he was prejudiced by counsel's error. Also, the evidence sufficed to sustain Thomas's conviction of possession with intent to deliver cocaine. We affirm Thomas's conviction and sentence.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young